STATE v. SHEVLIN-CARPENTER COMPANY.[1]

August 3, 1906.

Nos. 14,689—(23).

**Trespass on State Land.**

 Chapter 163, p. 349, Laws 1895, declaring certain acts of trespass upon state lands a crime, imposing a penalty therefor and fixing the measure of damages to be recovered in a civil action, construed, and *held* to impose upon a casual or involuntary trespasser criminal punishment and also double damages for his wrongful acts.

[1] Reported in 108 N. W. 935.

### Act Constitutional.

So construed, the statute is *held* not obnoxious to constitutional principles, but a valid legislative enactment.

### Crimes.

It is within the exclusive power of the legislature to declare what acts shall constitute a crime, to define the same, and to provide such punishment therefor as may be deemed appropriate.

### Treble Damages—Constitution.

A statute imposing double or treble damages for a trespass upon lands owned by the state does not violate the constitutional rights of the citizen, even though the same act of trespass may be punishable as a crime.

### Recovery of Damages.

The state may recover such damages in a civil action, and, though in the nature of a penalty, the wrongdoer is not thereby twice put in jeopardy of punishment for the same offense.

### Twice in Jeopardy.

Section 7, article 1, of the state constitution, providing that no person shall be twice put in jeopardy of punishment for the same offense, applies only to criminal prosecutions.

### Title of Statute.

The title of the statute above referred to *held* sufficiently to comply with the constitutional requirement that no law shall embrace more than one subject, which shall be expressed in its title.

Appeal by defendant from an order of the district court for St. Louis county, Dibell, J., overruling a general demurrer to the complaint. Affirmed.

*Clapp & Macartney, A. Y. Merrill, Davis, Kellogg & Severance, H. B. Fryberger,* and *R. J. Powell,* for appellant.

*Edward T. Young,* Attorney General, and *C. S. Jelley,* Assistant Attorney General, for the State.

BROWN, J.

This action was brought under the provisions of section 7, c. 163, p. 352, Laws 1895, to recover treble damages for an alleged wilful trespass upon lands owned by the state by cutting and removing timber therefrom. Defendant interposed a general demurrer to the complaint, and from an order overruling it appealed to this court.

It is alleged in the complaint that at the time stated therein defendant, a corporation, wilfully, wrongfully, and unlawfully, well knowing

that the state was the owner thereof, entered upon certain school lands of the state and cut and removed therefrom two million four hundred forty four thousand twenty feet of timber of the value of $17,108.14; that by reason of the fact that the act of defendant was wilful it became, and is liable, to the state for treble the value of the timber so cut and removed, and judgment was demanded accordingly. The statute under which the action was brought provides as follows:

> Section 7. If any person, firm or corporation, without a valid and existing permit therefor, cuts or employs, or induces any other person, firm or corporation to cut, or assist in cutting any timber of whatsoever description, on state lands, or removes or carries away or employs, or induces or assists any other person, firm or corporation to remove or carry away any such timber, or other property, he shall be liable to the state in treble damages, if such trespass is adjudged to have been wilful; but double damages only in case the trespass is adjudged to have been casual and involuntary, and shall have no right whatsoever to any remuneration of allowance for labor or expenses incurred in removing such other property, cutting such timber, preparing the same for market, or transporting the same to or towards market. Whoever cuts or removes, or employs or induces any other person, firm or corporation to cut or remove any timber or other property from state lands, contrary to the provisions of this act, or without conforming in each and every respect thereto, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding one thousand (1,000) dollars, or by imprisonment in the state prison not exceeding two (2) years, or by both in case the trespass is adjudged to have been wilful.

The questions presented by defendant in support of the demurrer, which we deem entitled to special consideration, resolve themselves into four propositions, or contentions, namely:

1. That the statute, in imposing a double liability for a casual or involuntary trespass, is obnoxious to those provisions of the state and federal constitutions which provide that no person shall be deprived of life, liberty, or property without due process of law. That in de-

claring the casual or involuntary trespass a crime, it violates sections 2 and 7 of article 1 of the state constitution, as well as contravenes natural justice, and invades those natural rights, which, if not directly, are impliedly, secured by the constitution, or are protected by the fundamental principles of the social· compact and exist independent of constitutional guaranty.

2. That in so far as it provides for the recovery of double or treble. damages in a civil action, it contravenes section 7, article 1, of the state constitution, which provides, among other things, that no person shall be put twice in jeopardy of punishment for the same offense.

3. That the damages given by the statute being in the nature of a penalty, can be recovered only by way of indictment and criminal prosecution.

4. That the subject of the statute is insufficiently stated in its title.

1. Counsel for the state suggest that the first contention of defendant above mentioned is not involved in the case, for the reason that the action was not brought to recover double damages, but under the treble damage feature of the statute, and based upon allegations that the trespass and acts of defendant complained of were wilful and unlawful.

But this view of the case is not tenable. The statute was intended to establish a definite measure of damages in all cases of trespass upon state lands, and to that end treble damages are provided for a wilful, and double damages for a casual or involuntary, trespass, thus wholly abrogating the rules of the common law in such cases. It is true that the action is founded upon an alleged wilful trespass; but if the state should fail to prove the allegation of wilfulness, and the trespass should, on the trial, turn out to have been casual or involuntary, recovery could undoubtedly be had for the amount fixed by the statute for. a trespass of that nature, viz., double damages. If, as in all probability will be the case, the main issue in the litigation should be the alleged wilfulness on the part of defendant, the latter would be entitled to an instruction to the jury that, in the event the state failed to prove the affirmative of that issue by a fair preponderance of the evidence, treble damages could not be given; and coupled therewith the court would be required to say that the failure of proof on that issue would not deprive the state of the right to a verdict for

damages under the next and only other rule applicable to the case. So that defendant is in position to insist that the statute is invalid, so far as it imposes a penalty in the way of double damages for a casual or involuntary act of trespass. 5 Enc. Pl. & Pr. 729; Starkweather v. Quigley, 7 Hun, 26, 29; Sprague v. Irwin, 27 How. Pr. 51; Dubois v. Beaver, 25 N. Y. 123, 82 Am. Dec. 326; Clark v. Field, 42 Mich. 342, 4 N. W. 19; Rhemke v. Clinton, 2 Utah, 230.

The first subject for consideration is the construction of the statute. If susceptible of a construction to the effect that there was no intention on the part of the legislature to declare the casual or involuntary trespass a crime, one feature of defendant's position would be eliminated, and it is important to ascertain the intention of the statute in this respect. The first paragraph of the section treats of the civil remedy. It provides that if any person, firm, or corporation, without a valid and existing permit issued in accordance with other provisions of the statute, cuts, or induces any other person to cut or assist in cutting, any timber of any description upon any state land, or removes or carries the same away, or employs or induces another to do so, he shall be liable to the state in treble damages, if the trespass is adjudged to have been wilful, but double damages where it is adjudged to have been casual or involuntary. The second paragraph deals with the subject from the penal standpoint, and declares that any person who shall cut or carry away such timber, or assist another in such an act, contrary to the provisions of the preceding paragraph, shall be guilty of a felony and punished by a fine not exceeding $1,000, or by imprisonment in the state prison for a period of not more than one year, or by both fine and imprisonment where the trespass is adjudged to have been wilful. The statute contains remedial and penal features, and as respects the former is entitled to a liberal construction, but as to the latter must be strictly construed. Sutherland, St. Const., §§ 337, 532.

Remedial statutes are generally treated with considerable liberality and are construed in the light of what was demanded or required of the lawmakers, the evils intended to be guarded against, and the particular wrongs to be remedied. Words are often omitted, or supplied by implication, and sentences transformed, to render the statute a consistent whole and effectuate the legislative will; and this, too, in con-

struing penal, as well as remedial, statutes, though many of the courts hold that the strict letter of a penal statute must control as against the state. But, after all has been said in generalizing upon the rules of construction, they all converge to the same point and bring up at the ultimate inquiry, the intention of the legislature.

By taking into consideration well-known facts leading up to the adoption of the statute in question, no difficulty is experienced in discovering the legislative will in this instance. The state is possessed of large tracts of timber lands of incalculable value, upon which designing persons have persistently trespassed, cutting and removing therefrom valuable pine timber. The state, through its officials, has been confronted with difficulties in detecting the guilty parties and bringing them to justice, and has been defrauded and robbed of large sums of money by their acts. It finally was thought necessary to enact a very stringent law to prevent future trespasses, and the drastic statute under consideration was the result. The statute exacts from the casual or involuntary trespasser double damages, and also declares his act a felony. The language of paragraph 2 will admit of no other view. It provides that any person who shall cut or remove timber from any lands of the state, contrary to the provisions of the statute, shall be guilty of a felony, and punished as there prescribed. No exception is found exempting the casual or involuntary trespasser from the penalty. That it was intended he should be criminally punished, in addition to the payment of double damages, is made certain by that clause of the section which provides for both fine and imprisonment where the trespass is adjudged wilful.

While courts, in construing statutes of this kind, where the language employed is broad and comprehensive enough to cover both wilful and involuntary acts, restricts the recovery of double or treble damages to cases of wilful trespass (McDonald v. Montana, 14 Mont. 88, 35 Pac. 668, 43 Am. St. 616; Kramer v. Goodlander, 98 Pa. St. 353; State v. Baker, 47 Miss. 88; Cohn v. Neeves, 40 Wis. 393), the statute under consideration is too explicit to admit of that rule, and we construe it, in harmony with its plain, unambiguous language, to impose upon the casual trespasser criminal punishment, as well as double damages.

As so construed, is it obnoxious to constitutional principles? We think not. The gist of the objection to the statute is that it punishes a person for an act which might, under some circumstances, be the result of a simple mistake, an act innocent in itself and committed with no evil purpose or intent. This, however, seemingly meritorious at first thought, is without force. One of the exclusive provinces of the legislative department of government is to declare what acts or omissions shall constitute a crime, to define the same, and provide such punishment therefor as may be deemed appropriate; and unless the constitutional rights of the citizen be invaded, its determination in all such matters is conclusive upon the courts. The legislature may declare that a wilful trespass upon the lands of another shall constitute .a criminal offense and fix the limits of punishment therefor, either by fine or imprisonment, or by compensating the injured party in damages to be recovered in a civil action, or by both, as its judgment may dictate.

Legislative provision for double or treble damages in such cases is sustained by many of the courts in this country. 12 Am. & Eng. Enc. (2d Ed.) 8, et seq.; Brown v. Evans, 8 Saw. 488, 17 Fed. 912; Smith v. Bagwell, 19 Fla. 117, 45 Am. 12; Hendrickson v. Kingsbury, 21 Iowa, 379, 380; Brown v. Swineford, 44 Wis. 282, 28 Am. 582; Mayer v. Frobe, 40 W. Va. 246, 22 S. E. 58; Missouri Pac. Ry. Co. v. Humes, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; Boetcher v. Staples, 27 Minn. 308, 7 N. W. 263, 38 Am. 295; 13 Cyc. 118, and cases cited. Although there may be a limit beyond which the legislature may not go, either in declaring what acts shall constitute a crime or in imposing an arbitrary rule of damages in excess of actual compensation, whether that limitation be found in those inherent rights reserved to the people by section 16 of article 1 of our state constitution, or in those inalienable rights mentioned in the Declaration of Independence, or in those ingrafted ,upon the constitution by implication through the process of construction by the courts (62 Cent. L. J. 144; 6 Columbia L. Rev. 69), we are clear that the authority of the lawmaking body was not exceeded in this instance in extending the rule of the cases above cited to the casual and involuntary trespass. An evil intent is ordinarily an essential

element in all criminal prosecution, but it may be dispensed with in particular cases by the legislature.

The act under consideration, in so far as it imposes a criminal punishment or double damages for the casual or involuntary trespass, dispenses with the necessity of proving a malicious or other wrongful purpose, and the pivotal question is whether the legislature could, within constitutional restrictions, so enact. The law on this subject is correctly summed up in Clark & Marshall's Law of Crimes, 103, as follows: "Public policy may require the legislature, in prohibiting and punishing particular acts under certain circumstances, to provide expressly or impliedly, that any person who shall do the act shall do it at his peril, and that he shall not be allowed to escape punishment by showing that he acted in good faith, without negligence, and in ignorance of the existence of the circumstances rendering the act unlawful. If the language and subject-matter of the statute show clearly that this was the intention of the legislature, the courts must give it effect, however harshly the statute may seem to operate in the particular instance." The principle of law thus laid down is supported by an almost unanimous line of authorities both in this country and in England. Com. v. Wentworth, 118 Mass. 441; Regina v. Woodrow, 15 Mees. & W. 404; Halsted v. State, 41 N. J. L. 552, 32 Am. 247; Com. v. Connelly, 163 Mass. 539, 40 N. E. 862; Com. v. Murphy, 165 Mass. 66, 42 N. E. 504, 30 L. R. A. 734, 52 Am. St. 496; State v. Kelly, 54 Oh. St. 166, 43 N. E. 163; State v. Smith, 10 R. I. 258; State v. Huff, 89 Me. 521, 36 Atl. 1000; State v. Zichfeld, 23 Nev. 304, 46 Pac. 802, 34 L. R. A. 784, 62 Am. St. 800; People v. Waldvogel, 49 Mich. 337, 13 N. W. 620; People v. Roby, 52 Mich. 577, 18 N. W. 365, 50 Am. 270; State v. Presnell, 34 N. C. 103.

We have already referred to the conditions existing in the state which prompted the legislature to enact this law—the fact that the lands of the state were being stripped of their value by wilful and reckless trespassers, and the great difficulty experienced by its officials in bringing guilty parties to justice under statutes which imposed a penalty only where the trespass was wilful. In these conditions the legislature deemed the property rights of the state would be best protected by dispensing in the future with the question of evil intent,

casting upon the individual the burden of determining at his peril the boundary lines of land from which he takes and removes standing pine. Within the principle of law to which we have just alluded, such legislation is sanctioned by sound public policy and is valid.

A similar statute, but far less explicit than the one under consideration, was sustained by the supreme court of South Dakota in State v. Dorman, 9 S. D. 528, 70 N. W. 848. A recent decision of the supreme court of Michigan is also directly in point. People v. Christian (Mich.) 107 N. W. 919. The statute under consideration in that case provided that every person, not lawfully authorized, who should himself enter upon, or induce or direct any other person to enter upon, lands owned by the state and cut and remove timber therefrom should be guilty of a felony and punished by imprisonment in the state's prison for a term not exceeding two years, or by a fine not exceeding $500 or by both fine and imprisonment. That statute was amendatory of a prior statute which provided for punishment only where the trespass was wilful, and the court held the statute valid, saying that it was as competent for the legislature to make an act of trespass criminal, as it was to make the opening of a saloon a criminal act. It appears from the opinion in that case that trespasses upon public lands, as in this state, had become notorious; that the state had been defrauded of thousands of dollars worth of valuable timber, and the court remarked that it had no difficulty in reaching the conclusion that the legislature not only intended to eliminate the question of evil intent, but possessed the power to so enact.

The act under consideration is analogous to statutes prohibiting the sale of liquor to minors, in construing which the courts uniformly hold that the honest belief of the person making the sale that the minor was of age is no defense; and to statutes prohibiting the sale of adulterated foods, where it is held that persons selling articles of food must know at their peril whether they are adulterated. It is no defense in such cases that the retail dealer procured the articles from a manufacturer and disposed of them under the belief that they were pure and unadulterated. Statutes imposing double damages for animals killed or injured by railroad trains in consequence of a failure on the part of the company to fence its right of way are

also analogous (Missouri Pac. Ry. Co. v. Humes, 115 U. S. 513, 6 Sup. Ct. 110, 29 L. Ed. 463; 12 Am. & Eng. Enc. [2d Ed.] 1073); or for double costs in such cases (Schimmele v. Chicago, M. & St. P. Ry. Co., 34 Minn. 216, 25 N. W. 347). And, too, statutes providing double damages for injuries done by vicious dogs, killing or injuring sheep or cattle, without regard to whether the owner of the dog knew of his vicious propensities. Statutes dispensing with the necessity of proving a scienter in such cases are sustained. 2 Am. & Eng. Enc. (2d Ed.) 372–374; Trompen v. Verhage, 54 Mich. 304, 20 N. W. 53; Newton v. Gordon, 72 Mich. 642, 40 N. W. 921; Kerr v. O'Connor, 63 Pa. St. 341; Chickering v. Lord, 67 N. H. 555, 32 Atl. 773. Other similar legislation, founded in an exercise of the police power or justified by public policy, might be referred to; but it is unnecessary.

The authorities cited justify the conclusion that the statute under consideration, in imposing a criminal punishment for the casual and involuntary trespass, is within the limits of constitutional restrictions and valid. And if valid in that respect, it follows, a fortiori, that it was within the power of the legislature to award double damages for the same wrong. In so dispensing with the wrongful intent, the legislature violated no constitutional right of the citizen, and the statute must be enforced.

2. It is also contended that the statute, as respects double and treble damages, violates section 7 of article 1 of the state constitution, which provides that no person shall be twice put in jeopardy of punishment for the same offense.

This proposition is founded upon the theory that double or treble damages are in the nature of a penalty, or as punishment for the wrong for which they are imposed, and that to sustain the statute would result in twice punishing the wrongdoer; at least, that he would be in jeopardy of a second punishment, if such damages were recovered in this action. Defendant is probably a little premature in raising the point. It might come with some force if presented in a criminal prosecution after recovery in a civil action. But we do not dispose of the question upon this ground. Upon its merits the courts are not in entire harmony, though we regard it as settled in this state by the decision in Boetcher v. Staples, 27 Minn. 308, 7

N. W. 263, 38 Am. 295. The court in that case said: "The rule, according to the great mass of authorities, applies as well where the wrongful acts of defendant bring him within the law for punishing crimes as where they are less aggravated in their character." The authorities on the subject are collected and discussed in 2 Sutherland, Dam. §§ 390–396. That the awarding of exemplary damages in an action for a tort, although punishable as a criminal offense, is not a violation of the constitutional provision that no person shall be twice put in jeopardy for the same offense, is affirmed by the great majority of the courts. 13 Cyc. 118; 12 Am. & Eng. Enc. (2d Ed.) 8–10, and cases cited. Nor does it deprive the citizen of his property without due process of law. Missouri Pac. Ry. Co. v. Humes, supra. The provisions of the constitution referred to apply to criminal prosecutions only. 12 Am. & Eng. Enc. (2d Ed.) 8, and cases cited.

Counsel for appellant recognize that the rule on this subject is settled in this state, as between individuals, but they earnestly contend that the rule laid down in Boetcher v. Staples, supra, should not be applied in an action brought by the state; that to sustain the right of the state to exemplary damages, and its further right to prosecute and punish defendant under the criminal provisions of the statute, would violate both the letter and the spirit of the constitution. It is insisted that exemplary damages are awarded in a measure to gratify the feelings of the aggrieved party; that the state has no such feelings, no vengeance or avarice; that it punishes the guilty in the interests of society, and not to add to its revenues. This is plausible, but not tenable. Whatever, in legal contemplation, exemplary damages may be, whether properly termed aggravated relief, or a penalty pure and simple, they are not imposed in the sense of or as a substitute for criminal punishment, but rather as enlarged damages for a civil wrong. No sound reason occurs to us why the state in preservation of the property intrusted to it for the use and benefit of the people, should not be granted all remedies that are afforded and extended individuals in the protection of their property and property rights. Indeed, potent reasons might be suggested for granting the state special privileges in this respect. Its property, particularly school lands, is located in remote parts of the state; and it is without adequate facilities for guarding and protecting the same from

trespassers. Its lands have been denuded of valuable timber year after year, and the school fund of the state has thus been greatly depleted. If the legislative department is without power to extend to it the rights possessed and granted the individual, the equal protection of the law in its property rights would be denied it. Statutes tempered in moderation as to penalty have proven in the past ineffectual, and unless the stringent features of the present statute are sustained in all respects, trespasses will continue in the future with impunity. No injustice can possibly result from requiring persons to ascertain the boundaries of lands owned by them, and we do no violence to no inherent right of the citizen in sustaining a statute the purpose of which was to impose that duty upon them.

3. Counsel for defendant also contend that the damages awarded by the statute, being in the nature of a penalty, can be recovered only by way of indictment and criminal prosecution; that the state cannot maintain a civil action to recover the same. We do not concur in this contention. We deem it unnecessary to extend the opinion by its discussion. Respecting the right of the state to maintain a civil action to recover exemplary damages, we entertain no serious doubt; in matters involving its proprietary or business functions, the state occupies the same position in the courts as private suitors. 26 Am. & Eng. Enc. (2d Ed.) 485.

4. The further contention that the statute is invalid in that the subject thereof is not sufficiently expressed in its title is not well taken. The title of the act is,

> An act regulating state lands and the product of the same, and to repeal certain acts and parts of acts.

Though the title is not so expressive as it might have been made, the constitutional requirement is substantially complied with. The statute made the subject-matter of the title is a practical revision of prior statutes and contains numerous conditions and provisions regulating and controlling the sale, leasing, or other disposition of state land. The title does not come within the objection that it was employed as a cloak for inappropriate legislation, but answers the purpose intended by the framers of the constitution which was not to require the subject-matter of proposed legislation to be expressed fully

and explicitly in the title, but to prevent such enactments as chapter 24, p. 73, Laws 1855, where, under the title, "An act to incorporate the Root River Valley and Southern Minnesota Railroad Company," the legislature incorporated the railroad company, located the county seat of Fillmore county, declared the county of Wright duly organized, and provided for the appointment of certain officers therein.

This covers all questions, discussed in the briefs, which we deem entitled to special reference, and for the reason stated the order of the trial court overruling the demurrer to the complaint is affirmed.

Order affirmed.