## STATE v. SHEVLIN–CARPENTER COMPANY.[1]

### November 1, 1907.

### Nos. 15,480—(25).

**Act Constitutional.**

Chapter 163, Laws 1895, which subjects a trespasser upon state timber lands to damages in double or treble the value of the timber taken, is not in conflict with the state or federal constitutions. State v. Shevlin-Carpenter Co., 99 Minn. 158.

**Timber Permit.**

A permit to remove timber purchased from the state at a public sale is limited in the first instance by section 24, c. 163, Laws 1895, to the period of two logging seasons, with authority in the timber commission, for good and sufficient reasons, to grant one extension, and that for the further period of one year only.

**Same—Evidence.**

It conclusively appears from the evidence that the timber in question was cut and removed by appellant after its permit had expired, and that the taking was without authority of law.

**Estoppel of State.**

The state is not estopped, in a civil action, to recover double the amount of value of timber taken by reason of the fact that the land commissioner gave appellant to understand that a further extension of the permit would be granted, and by reason of the fact that appellant proceeded in good faith, and the state received payment therefor, with interest, and retained the same.

**Wilful Trespass.**

The finding of the trial court that the trespass was wilful is not sustained by the evidence.

**Same—Evidence.**

It conclusively appears from the evidence that the trespass was inadvertently committed, in good faith, upon the supposition that authority of the state had been granted.

**Affirmed on Appeal.**

Judgment affirmed in all respects, except that the amount thereof is reduced to double the value of the timber.

[1] Reported in 113 N. W. 634; 114 N. W. 738.

Action in the district court for St. Louis county against Shevlin-Carpenter Co. and John F. Irwin to recover $51,324.42 for the unlawful cutting and removal of timber from certain school lands. The case was tried before Ensign, J., who made findings and ordered judgment in favor of plaintiff for $26,995.17. From this judgment, defendants appealed. Remanded with directions to reduce the amount of the judgment to $14,664.12. Affirmed in other respects.

*Clapp & Macartney, A. Y. Merrill, H. B. Fryberger,* and *R. J. Powell,* for appellants.

*Edward T. Young,* Attorney General, and *C. S. Jelley,* Assistant Attorney General, for the State.

LEWIS, J.

Action by the state for the purpose of recovering treble damages from appellants for the wilful and unlawful cutting and removing from state lands of 2,444,020 feet of timber. Appellant company answered, and admitted the cutting and removal of the timber, justified the same under a sale and permit to J. F. Irwin, its representative, denied that the timber was cut and removed wilfully and unlawfully, alleged payment in full, and specially pleaded the unconstitutionality of chapter 163, p. 349, of the general laws of 1895, under which the state seeks to recover. On a former appeal, upon demurrer to the complaint (State v. Shevlin-Carpenter Co., 99 Minn. 158, 108 N. W. 935), the constitutional questions were raised, and it was there held that the act was constitutional, and that in case of trespass the state might recover either the double value of the property taken, or treble its value, according to whether the facts constituted a casual or involuntary, or a wilful and unlawful, trespass. We adhere to that decision, and for the reasons set forth in the opinion then filed.

Upon trial on the merits the trial court found that on November 14, 1900, the state sold to John F. Irwin, appellant's representative, the pine timber involved in this action for the agreed price of $7 per thousand feet, board measure; that on November 14, 1900, permit No. 358–B was issued to Mr. Irwin by the land commissioner, authorizing him to cut and remove the timber so purchased during the logging seasons of 1900, 1901, and 1902; that the permit expired June 1, 1902, and was extended to June 1, 1903; that at the time the permit was issued appellant company paid into the state treasury the

sum of $1,370, being twenty five per cent. of the appraised value of the timber sold, as provided by section 23, c. 163, p. 360, Laws 1895; that in the winter of 1903–1904, and after the extension above mentioned had expired, appellant company wilfully and unlawfully cut and removed the timber in question; that after the timber was cut the surveyor general duly scaled and returned the amount of the timber so cut and removed to the land commissioner, who thereupon computed the total amount due to be $18,514.39; that a draft was drawn on Mr. Irwin for that amount, which included the surveyor general's scaling fees of $147.20, and interest on the purchase price at the rate of eight per cent. for one year; that the draft was duly paid; that the state received and still retains the amount. The court also found that the value of the timber taken was. $6 per thousand feet, board measure, and that the single value thereof was $14,664.12, but ordered judgment to be entered for treble that amount, less a credit of $16,997.19, and judgment was accordingly entered for the sum of $26,995.17.

There are two questions before the court: (1) Did appellant make out its defense that the timber was lawfully cut and removed, and was paid for in full? (2) If the evidence fails to sustain that position, and warrants the conclusion that the timber was cut and removed without authority of law, then was it taken under such circumstances as to warrant the state in recovering as for a wilful and unlawful trespass, or was the act of cutting and removing the timber of such a character as to bring it within the provisions of the statute, viz., a casual or involuntary trespass?

1. Under the provisions of. section 11, c. 163, p. 354, Laws 1895, the state land commissioner is authorized to sell the pine timber of the state when the same is liable to waste, and not otherwise; and it is provided that when a sale of timber is made the commissioner shall execute a permit to enter upon the land for the purpose of cutting and removing it, and before any permit shall be granted the timber shall be estimated and appraised. The act provides that the commissioners of appraisement shall be appointed by the land commissioner, and there are elaborate provisions regulating the estimators and the method of scaling the timber. By section 18 (page 357) a

timber commission is established, consisting of the land commissioner, the governor, and the state treasurer, and it is made the duty of that commission to determine whether or not any timber belonging to the state is subject to sale, and the board shall determine whether a sale is for the best interests of the state and necessary in order to protect the state from loss.    Section 23 covers the question of permits, and the land commissioner is authorized to issue a permit in such form as the attorney general of the state may prescribe, authorizing the purchaser of timber to enter upon and cut and remove the same from the land.    The permit is issued, signed, and sealed by the commissioner.    The act provides that the permit shall be dated as of its true date, and shall state the time of its expiration, and that it cannot be extended, except as provided in section 24 of the act, which provides that no permit shall cover more than two logging seasons, and that no permit shall be extended, except by the unanimous consent of the board of timber commissioners, and under no circumstances shall an extension be granted for more than one year, and then only for good and sufficient reasons.    The permit involved in this case, as already stated, was issued November 14, 1900, and expired June 1, 1902.    It bears the indorsement of an extension until June 1, 1903, on account of winter breaking up so early, and was signed by all the members of the timber commission.

Mr. Clarke, a witness on behalf of appellant, testified that he was informed by one of appellant's clerks that there were some permits for the cutting and removing of timber which were expiring and needed to be looked after; that he took the same and called on the state auditor and handed him the permits; that the auditor said he thought there would be no trouble about getting two of·them extended, as they had run but two years, but that the third—the one in question—would have to come before the state timber board; that there were a number of permits in the same shape, and they would have to be passed upon by the state timber board as to extension; that word was received later at the Shevlin-Carpenter Company's office that the timber board had passed on the extension, and that appellant was allowed to go on and cut the timber by paying the amount stated in the permit, with an additional eight per cent. per annum for one ·year from the time of the extension; that accordingly ap-

pellant went on and cut the timber in the ordinary course of business, the surveyor's scale showing the amount cut; that the state auditor made draft on appellant for the amount, plus interest and scaling charges, less the amount paid in, some $1,350; that appellant paid the sum to the state treasurer and received his receipt therefor. The witness further testified that appellant acted in good faith, believing it had a perfect right under the permit to cut and remove the timber.

The state auditor was called as a witness, admitted that he had a conversation in his office with Mr. Clarke regarding the permit in question, and testified:

> Mr. Clarke called in connection—to inquire about the condition of this permit which he had, one of them being the one in question, and stated that they had been unable to cut it during the life of that permit, and he wanted to know what could be done with it. I explained to Mr. Clarke that under the law I had no authority to grant that extension; but I called his attention, however, to what had taken place regarding some other permits which were similarly situated, that they were about to expire, or had expired, and that the timber board, consisting of the governor, state treasurer, and the state auditor, had heard the statement of the parties interested and had practically consented to permit them to cut that timber the succeeding year on condition that they would pay eight per cent. interest. * * * And I stated to Mr. Clarke that, inasmuch as he appeared to have as good a reason for asking it as they had, we should treat him just the same as we had agreed to treat the others; * * * and whether or not that was afterwards submitted to the timber board I am not clear, and I won't be able to state positively. But it seems quite reasonable that at some later time I did call that matter to the attention of the timber board, and stated to them that there were other permits similarly situated to the ones that had been acted upon specifically by the board, and there were others besides Mr. Clarke's, and I stated that I thought we would have to treat all alike. We could not give a concession to one and refuse it to another.

The witness also stated that he had made an examination of the files of the office for records of the meeting of the timber commission, but found none prior to January 1, 1901, and had no personal recollection whether or not a meeting had taken place with respect to this permit. On cross-examination the state's counsel asked the auditor the following questions:

> Q. And at that time you knew that it was beyond the power of yourself as state auditor, also beyond the power of the timber board of which you were a member, to extend that permit any further, did you not? A. I did. Q. And you told Mr. Clarke that fact, did you not? A. That is my recollection of it; yes, sir.

On redirect examination Mr. Clarke testified that there was nothing said about the lack of power to extend the permit. That portion of section 24 which confers authority to make a second extension reads as follows:

> No permit shall be extended except by unanimous consent of the board of timber commissioners, and under no circumstances shall an extension be granted for more than one year, and then only for good and sufficient reasons. In case an extension is granted a log mark shall be agreed upon for the third season.

Appellant submits that the authority to make an extension is not necessarily limited to the period of one year, and that, when considered in connection with the entire act, the language fairly means that other extensions can be made, but only for one year at a time. The argument on this point is based on the evident purpose of the entire act, viz., to protect the timber lands of the state from waste, and that the same are to be sold only at public sale after an appraisement. It is argued that when a permit is about to expire, if nothing is to be accomplished by having another public sale, then there is no reason why an additional extension for another year might not be granted, so as to allow the timber to be removed under the original sale. We are unable to accept this interpretation of the statute. To our mind it is clear that it was the intention to limit the power of the timber

commission to one extension of one year only; the result in such case being that, if the timber is not cut and removed within the additional year, the state must begin de novo, and have a new appraisement and public sale.

It is further claimed that, conceding the second extension was .invalid for want of authority under the law to grant it, yet the state officers, having construed the act to the contrary and having assumed to proceed within their legal rights, having permitted appellant to go upon the land and cut and remove the timber, having caused the timber to be scaled, and having received the amount of the value according to the scale and purchase price, together with eight per cent. interest during the year of extension, the state is estopped from denying the validity of the transaction, and should not be permitted to recover even the double value in damages. Conceding that appellant and its representatives were acting in good faith, we are satisfied that under the circumstances of this case appellant is not in a position to urge that defense. Estoppels against the state are not favored, and do not arise from the negligence of its officers, since those who deal with an officer of the state are bound to know the extent of his power and authority. Filor v. U. S., 9 Wall. 45, 19 L. Ed. 549; Pulaski County v. State, 42 Ark. 118; Salem v. McCourt, 26 Ore. 93, 41 Pac. 1105; State v. Brewer, 64 Ala. 287. However, in the second proviso of section 37 of the act in question it is declared that the state shall not be estopped to recover the value of its timber by the acts of its officers in receiving payment therefor. By this language the legislature intended to remove any doubt upon the question of estoppel when timber is taken contrary to law. Although the parties are mistaken as to their rights and proceed in good faith, honesty of purpose cannot constitute a complete defense where the taking is unlawful. The provisions of chapter 163, pp. 349–371, Laws 1895, are plain upon this subject, and the parties are bound to know the law.

2. As already stated, appellant proceeded to cut and remove the timber in the same manner as if an actual legal extension had been granted; that is to say, appellant openly went on the land and did the cutting, immediately notified the proper officers, and the scaling was made, the estimate thereof sent to the state auditor, a bill of the

proper amount rendered, with eight per cent. interest added, and a draft drawn on appellant's representative, Mr. Irwin, in whose name the permit was issued, which was paid to the state, and the money retained by it. It is clear that the state auditor and state treasurer proceeded in good faith and acted upon the theory that an extension of the permit had been granted, and that appellant was authorized to cut and remove the timber under and by virtue of such extension. The proper officer was notified to scale the logs in pursuance of such understanding, and the bill was made out in the auditor's office. The draft itself upon its face indicates that it was pursuant to the authority conferred by permit No. 358–B, and the treasurer's receipt for the money refers to the particular draft drawn by the auditor. The state takes the position that this evidence justified the trial court in finding that the trespass was wilful; that appellant was bound to know the law, and must take the utmost penalty for violation thereof. Is this position equitable and sound? A decision of this question does not depend altogether on the strict legal rights of the parties as to the title of the timber cut and removed.

We are dealing here with the question of intention and good faith. The representations made to appellant's representative were equivalent to informing him that, unless advised to the contrary, he might consider that the application to extend the permit was granted. In view of these admissions, although the auditor stated his own want of power, he could not at the same time have stated to Mr. Clarke that such extension could not legally be granted by the timber commission; for the two statements are absolutely contradictory and cannot be reconciled. The auditor, as land commissioner, conducted the negotiations upon the theory that the timber commission possessed such authority, and said that such extensions had been granted to others similarly situated, and that they would treat this particular permit in the same manner. This is admitted, and, if true, then there was no occasion for making the declaration that the board was without authority to act. Although the witness made an affirmative answer to the question asked by the state's counsel on cross-examination, we must assume that such answer was made inadvertently.

The state's position rests upon the assumption that a party commits wilful trespass simply because he is charged with knowledge

of the law; but, where the question of intention enters into the essence of the offense, the presumption that the act was wilfully performed may be rebutted, and the burden is upon appellant to affirmatively show that it was not guilty of intentional wrongdoing. Karsen v. Milwaukee & St. P. Ry. Co., 29 Minn. 12, 11 N. W. 122. The act in question very wisely makes a distinction between trespasses committed involuntarily and those committed wilfully. The definition of "casual and involuntary" should not be restricted. The words are intended, as used in chapter 163, to convey the idea that, when an illegal cutting of state timber lacks the elements of wilfulness and intention, then the damage shall be double the value only. One who, through mistake or inadvertence, passes beyond his own boundary line and cuts and carries away timber of another, is not guilty of wilful trespass. Batchelder v. Kelly, 10 N. H. 436, 34 Am. Dec. 174. "Wilful," in the present case, is not determined by the mere fact that appellant knowingly and purposely entered upon the land in question and cut and removed the state's timber therefrom. Of course, its action in that respect was the result of a fixed purpose so to do. To determine what is meant by "wilful," we must ascertain the purpose with which the act was performed. Did appellant intend to commit a wrong against the state, and to appropriate the timber without regard to the rights of the state?

In the case of U. S. v. Homestake Mining Co., 117 Fed. 481, 54 C. C. A. 303, defendant justified the trespass upon the ground that it had been informed by the secretary of the interior that certain timber might be taken from the forest reserve land until further notified. It turned out that, although no authority was conferred for the taking of the timber, the court held that the parties acted in good faith in relying on such promise. The court pertinently remarked that, if the presumption that a party was charged with knowledge of the law made every trespasser a wilful and intentional wrongdoer, then there never would be a trespasser through inadvertence or mistake, or one who violates the law in the honest belief that he is acting within his legal rights. In the case of King v. Merriman, 38 Minn. 47, 35 N. W. 570, it was held that in an action for the value of timber cut and carried away from the land of another, if defendant was an unintentional and mistaken trespasser, or honestly and reasonably believed that his conduct was right-

ful, the measure of damages was the value of the timber at the time it was taken. In State v. Shevlin-Carpenter Co., 62 Minn. 99, 64 N. W. 81, timber was cut and removed under a void permit; but it was held proper, nevertheless, to determine whether the trespass was wilful or in good faith, in arriving at the proper basis of damages in a replevin action. That case would seem to be good authority for the rule that an illegal taking of the state timber is not necessarily a wilful trespass.

The record of this case forces one of two conclusions: Either both parties, appellant and the representatives of the state, were acting in good faith, or appellant, knowing better, purposely took advantage of the state, and deliberately, wilfully, and fraudulently cut the timber. Such wilful and fraudulent purpose cannot reasonably be inferred from appellant's conduct, and is not justified under the evidence by the mere fact that its officers and representatives were charged with knowledge of the law. The finding of the trial court that appellant was guilty of a wilful trespass is not sustained by the evidence. On the contrary, the record conclusively shows that appellant had reasonable ground for believing authority had been granted, and honestly acted on such belief.

The court found that the amount of timber taken by appellant was 2,444,020 feet, and that its value was $6 per thousand feet, board measure, making a total of $14,664.12. Being of opinion that, in this action, the state is limited to a recovery of double damages, and the timber cut having been paid for, the judgment is necessarily limited to the value as found.

Remanded, with directions to reduce the amount of the judgment to $14,664.12. In all other respects, the judgment is affirmed.

START, C. J. (dissenting).

I dissent. The controlling question in this case is one of fact, namely: Did the defendants wilfully cut and remove the timber in question? The trial court found as a fact that they did so cut and remove the timber. The majority opinion holds that "it conclusively appears" from the evidence "that the trespass was inadvertently committed in good faith, upon the supposition that authority of the state had been granted." If this be true, then the finding of the learned

trial judge was made without any evidence whatsoever to support it. It is not a question of the preponderance of the evidence, but whether the record discloses any evidence fairly tending to support the finding.

The conclusion which I draw from the record is that the evidence not only supports the finding within the rule, but that it is difficult to see how the trial judge, upon the evidence, could come to any other conclusion than the one reached by him. In considering the question whether the evidence supports the finding, we must assume that the representative of the defendant was informed by the state auditor to the effect that neither he nor the timber board had any power to extend the permit; for the credibility of the witnesses was a question for the trial judge, and his memorandum shows that he accepted the testimony of the auditor as true. It was not necessary to make a special finding of such evidentiary fact, for only the ultimate facts found are to be stated in the findings.

The permit under which the defendant attempts to excuse its acts expressly provided that there could be no extension of the time limit of the permit, except as provided in section 24, c. 163, p. 362, Laws 1895, which, in language so terse and so clear that no intelligent man could fail to understand it, forbade the extension of the permit, under any circumstances, for more than one year, and then only for good and sufficient reasons. It is an admitted fact in this case that there was one extension of this permit, which had expired before the trespass was committed. We have, then, a case where the defendant's permit, and the statute therein referred to, showed on its face that it could not then be extended under any circumstances, and, further, that the defendant was told by the state auditor that no state official or board had any power to extend the permit; and yet, with knowledge that the permit had expired and that the law forbade its renewal, the defendant deliberately went upon the land of the state and cut and carried away its timber thereon. Defendant seeks to mitigate this act, and to establish that the trespass was not wilful, within the meaning of the statute, by evidence tending to show that the state officers having charge of its public lands had granted extensions of permits for a longer time than one year to other parties; that they permitted the defendant to go upon the land and cut and remove the timber, caused it to be scaled, and received from the defendant the purchase

price therefor, with interest, during the year for which they understood the permit had been extended. If this were a case between private parties, the facts which such evidence tends to prove could be invoked as an estoppel against any claim of damages for a wilful trespass. They are, however, of no avail against the state. The evidence in this case, tending to show either a violation of the law or a lax enforcement of it by public officers, does not, in my opinion, establish the good faith of the defendant in the premises.

On January 24, 1908, the following opinions were filed:

PER CURIAM.

This case having been reargued and fully considered, the former decision is adhered to.

ELLIOTT, J.

I am of the opinion that the former decision should be adhered to, and merely add the statement that the case rests upon its own particular facts. It is not held that the state auditor or timber board can expressly or by implication waive the rights of the state or protect a trespasser from the penalty imposed by the statute.

BROWN, J. (dissenting).

I concur in the dissent of the Chief Justice. It is clear to me, in view of the express statutory restrictions upon the subject involved in this case, that neither the state auditor nor the state timber board had authority expressly to waive the rights of the state, and if they could not do so by affirmative action, a fortiori, their silent acquiescence in the commission of or settlement for other trespasses by defendant or others, would furnish defendant no protection for the trespass here complained of. The rights and liabilities of the parties are clearly and specifically defined by statute, by which the court is controlled. The judgment should be affirmed.