# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

---

STATE v. RAT PORTAGE LUMBER COMPANY.[1]

February 7, 1908.

Nos. 15,469—(24).[2]

**Cutting Timber on State Land—Permit.**

Plaintiff issued to defendant a permit which conferred the privilege of cutting and removing timber on a specified tract of state lands prior to June 1, 1900. Part of the timber was not removed from the land within the time limit prescribed by the permit, but was removed at a later period. More than three years after the removal of the logs and the payment of the purchase price to the state, it brought an action of conversion for their value under the "timber act" (chapter 163, Laws 1895). It is *held* that the legislature in effect provided thereby that a person to whom such a permit is issued has a right to cut and remove the timber only during the life of the permit; that after the expiration of the term of the permit the logs cut, but not removed, were the property of the state; and that defendant, having no right to remove this property, was guilty of conversion in so doing.

**Construction of Act.**

When the legislature has the constitutional power to enact a given law, and it properly frames an act clearly expressing its legal intent, it is the duty of the courts to construe that act so as to effectuate its terms. The argument based on the inconvenience which may result is out of place under such circumstances.

[1] Reported in 115 N. W. 162; 117 N. W. 922.
[2] October, 1907, term calendar.

**Action for Conversion.**

The action in conversion brought by the state to recover the value of the timber which had not been removed within the time prescribed by the permit was not barred by the statute of limitations applying to actions based upon a statute for a penalty or forfeiture (R. L. 1905, § 4077), or to actions for a penalty or forfeiture to the state (section 4078).

Action in the district court for St. Louis county to recover $5,604 for the conversion of certain saw logs. The case was submitted upon stipulated facts to Ensign, J., who made findings and ordered judgment in favor of defendant. From the judgment entered thereon, plaintiff appealed. Reversed.

*Edward T. Young*, Attorney General, and *C. S. Jelley*, Assistant Attorney General, for appellant.

*R. R. Briggs*, for respondent.

JAGGARD, J.

The state of Minnesota on December 1, 1898, issued to defendant's assignors a permit which conferred the privilege of cutting and removing timber on a specified tract of state land prior to June 1, 1900. It will be assumed for present purposes that the permit had been properly assigned to defendant. During the life of that permit the timber was cut; but 934,010 feet, board measure, which were cut, were not removed from the land within the time limit, but were removed at a later period. The state was thereafter paid by draft for the timber cut. The value of the stumpage was $2 per thousand; the value of the logs was $5 per thousand. No sharp practice or fraud was chargeable to the defendant or its assignors. Its good faith is conceded throughout. The state, more than three years after the removal of the logs and the payment, brought this action of conversion for their value.

The trial court found facts in accordance with this statement, and also found: "That on account of the condition of the roads, the weather, and the inability of securing sufficient and reliable woodsmen and teamsters during the logging season of 1899–1900 it was not practical to haul all of said timber from said land, and that in removing from said land 11,126 logs, containing 934,010 feet, board measure, after said first day of June, 1900, the defendant believed that it had

the right to do so under the permission of the said Kehl & Dearey and the said state auditor. * * * That the surveyor general of said district and the state auditor of the said state of Minnesota were each duly notified of the time when defendant would enter upon said land and remove said saw logs therefrom, and no objection was made to the removal of the same, except as is herein found." He concluded as a matter of law that the defendant was entitled to judgment. From the judgment entered thereon, the state took this appeal.

This court has recently expressed its views of what the ordinary rule of law should be, and was, in the absence of statutory provisions, on the subject. According to that view, under the circumstances presented to it for consideration, this court held that the title to the timber, when cut, vested in the persons given permission to enter the lands of another and cut and remove timber therefrom. If such person, after the expiration of the license, entered upon the lands and took the timber which he had cut, he took what he owned, and was not liable in trover for the value of the logs which he removed. The remedy of the landowner, it was suggested, was in trespass, or in an action for use and occupation, or perhaps both. Alexander v. Bauer, 94 Minn. 174, 102 N. W. 387. It is unnecessary, however, to enlarge upon this view of the law, or on State v. Shevlin-Carpenter Co., 62 Minn. 99, 64 N. W. 81, which arose before the passage of chapter 163, p. 349, Laws 1895, and was determined on common-law rules. The controversy presented on this appeal is not what this court thinks the common-law rule may be, but simply what the legislature has determined that the law is on this point.

The only question involved in this case is the determination of the liability of defendant under the timber act of 1895 (chapter 163, p. 349, Laws 1895). The constitutionality of that act has been sustained. State v. Shevlin-Carpenter Co., 99 Minn. 158, 108 N. W. 935. The especially significant provisions of that act are as follows:

Section 7 provides that "if any person * * * without a valid and existing permit therefor, cuts * * * any timber of whatsoever description on state lands, or removes or carries away * * * any such timber, * * * he shall be liable to the state in treble damages. * * * Whoever cuts or removes * * * any timber or other property from state lands, contrary to the provisions of this act, shall be guilty of a felony."

Section 23 provides that " * * * the land commissioner shall issue to such purchaser a permit in such form as may be prescribed by the attorney general, by the terms of which said purchaser shall be authorized and empowered to enter upon and cut and remove from the land therein described the timber sold, according to the provisions of this act," and that "said permit shall also provide that the purchaser shall pay the state the permit price for all the timber which he fails to cut and remove."

Section 24 provides that: "No permit shall be issued to cover more than two logging seasons. The timber shall be cut and removed within the time prescribed by such permit." See State v. Shevlin-Carpenter Co., 102 Minn. 470, 113 N. W. 635.

Section 26 provides: "In case the purchaser at any such sale, or his assignee, if any, fails or neglects to cut *and remove* the timber, or any part thereof, purchased by him, prior to the time when the permit, issued on the sale thereof, expires, he shall, nevertheless, pay the state the permit price for *all the timber which he fails to cut and remove,* but under no circumstances shall he cut or *remove* said timber, or any part thereof, after the expiration of such permit. The sureties on the bonds given at the time of the purchase or the assignment, if any, of the permit issued on such sale, shall be liable therefor."

Section 37 provides in part: "Provided, however, that neither the making of said draft, the payment thereof, the bringing suit thereon, the seizure of such timber or the sale thereof, as herein provided, shall in any manner be construed to release or discharge any surety upon any bond given pursuant to the terms of this act, anything herein contained to the contrary notwithstanding, nor to in any manner bar or estop the state from afterwards claiming that the timber for which said draft was given was cut, or *taken, or removed,* contrary to the law, and recovering for the same, in any civil action, or prosecuting the offender criminally under the provisions of this act or both."

The permit prepared in accordance with directions of the attorney general conforms to the requirements of these sections. It provides that "the purchasers shall pay the state permit price for all timber remaining standing or remaining cut *and not removed* from the premises which they have agreed to cut, haul, *and remove,* after the expiration of this permit." (All italics are ours.) These provisions leave no doubt that the legislature deliberately changed the common-

law rules applicable to timber cut on, but not removed from, state lands. The effect of the provisions of the act on this point is that the person to whom a permit is issued has a right to cut and to remove timber during the life of the permit, and that after the expiration of the permit the timber not removed is the property of the state. The defendant, therefore, had no right to remove this property, and was guilty of conversion in so doing.

Defendant, however, argues that other portions of the law sustain its position. As a result of an examination of the statute as a whole, we have found some confirmation of the view previously expressed, and no necessary inconsistency with it. The provision most favorable to defendant's contention is probably section 36, concerning collection for timber cut. That requires that payment on a sight draft on the purchaser shall be made to the state treasurer, who shall give duplicate receipts therefor, upon filing one of which he shall execute under his hand and seal a bill of sale of the timber so paid for by the purchaser or his assignee. It may be presumed in this case that the officials did their duty and that such a bill of sale had been executed. This provision must, however, be construed with reference to other provisions to which reference has been made. It did not operate to repeal those provisions or to nullify the rights which they conferred upon the state. In other words, the legal effect of a bill of sale must be limited to cases in which the purchase did not violate the law.

The defendant further assumes it was not the purpose of the legislature to construct a trap for the unwary, viz., by allowing the state to accept payment of timber cut and to keep what it had sold, and, if the vendee removed it, then, by making him liable for its conversion, to compel him to pay the consideration twice for nothing. We agree with the defendant as to the appearance of injustice in such a construction. It is not, however, in the power of courts to avoid legislation because it may seem drastic or inexpedient. It is not their function to supervise what the legislature sees fit to do, or to enforce only such session laws as appear to be wise. It is not within their power to alter them because of hardship involved in their application to particular circumstances. When the legislature has the constitutional power to enact a given law, and it properly frames an act clearly

expressing a legal intent, it is the duty of the courts to construe that act so as to effectuate it. The argument based on the inconvenience of the result is then out of place.

The act in question was drawn with care and deliberation. It expresses the legislative intention in exact and apt words. There can be no reasonable doubt as to what its requirement that the holder of a permit "cut and remove" the logs means. If the timber was cut and allowed to remain on state lands, it was not "removed," within the obvious meaning of the term. It is undoubtedly true that there is no difficulty in reading "or" for "and," or "and" for "or," when the sense requires it. The sense of no single provision, nor of all the provisions, construed as a whole, either requires or justifies such a change in this instance. On the contrary, so to do would pervert the unmistakable intent. A consideration of the occurrence of these two words, for example, in section 26 and in the part of section 37 previously quoted demonstrates that they were used ex industria, and not casually.

Nor does the familiar rule of construing so as to avoid forfeiture change the conclusion otherwise inevitable. In no proper sense is a forfeiture here involved. The contract with the state expressly provided that, unless the timber was removed within the prescribed time, the title to the timber should remain in the state. The action is, moreover, at law, and not in equity. The principle that equity will not enforce a forfeiture is wholly irrelevant.

Nor is this construction so unreasonable nor so unjust as has been argued. The occasion for this enactment is supplied by the history of the abuse of timber permits in this state. State v. Shevlin-Carpenter Co., 99 Minn. 158, 163, 108 N. W. 935. The objects sought to be attained by it seem to have been the saving of state timber from waste and destruction, the conversion of the proceeds as soon as possible to school funds, and the complete clearing of the land for agricultural or other use. Moreover the law allows a "year of grace." Section 24, with respect to the permit, provides that "no permit shall be issued to cover more than two logging seasons." The remedy provided by statute, but of which defendant neglected to avail itself, was to have secured from the timber board the extension of the permit under this section. This is not, however, an essential consideration.

The further contention of defendant that state officials expressly or impliedly acquiesced in and consented to their procedure does not, on its face, state a legal justification. Such failure to object neither estopped the state nor was equivalent to a permit. It constituted no bar to this action. The state officers could not thus do indirectly what they were forbidden to do directly. Official discretion was limited to the granting of an additional and formal permit for one year. No official conduct extending it for a longer period or in a different manner can properly be given the effect of preventing the successful assertion of the rights of the state.

In this case the state owned certain lands. The legislature had the power to prescribe the terms upon which it would permit timber thereon to be cut and removed. The law in question clearly and certainly set forth these terms. The permit was executed in accordance with them. It is our duty to enforce them. This court is vested with no discretion in so doing. The defendant acquired only such rights as the permit conferred and no others. The conclusion follows that the state is entitled to maintain this action of conversion.

That action was not barred by the statute of limitations. It was not at law an action based "upon a statute for a penalty or forfeiture," which must be commenced within three years (section 4077, R. L. 1905), nor an action "for a penalty or forfeiture to the state," which must be commenced within two years (section 4078). This follows from the previous conclusion as to the legal effect of the rights conferred by the permit, and from the form of the present action. This is an action in trover. State v. Buckman, 95 Minn. 272, 104 N. W. 240, involved an action for a penalty. It is a sufficient answer to defendant's argument in this connection that the same state of facts may give rise to two causes of action, one of which, at the time of suit, may be barred by the statute of limitations, and the other not. This is too elementary to justify discussion.

Reversed.


LEWIS, J. (dissenting).

I dissent.

First. There are but two tenable theories as to the title to timber purchased under the provisions of the act. The title passes to the

purchaser when the trees are severed, and thereafter the state has a lien only upon the logs for the purchase price, or the title passes when the purchase price is paid, if the timber had then been converted into logs within the prescribed time. Upon either theory the title to the logs in question had passed when they were removed from the land, and the state cannot maintain this action.

Second. Conceding that the title never passed from the state, the state timber board having authority to extend the permit, and the land commissioner having assumed to extend it, and respondent having in good faith paid for the timber and removed the logs, the state is estopped from asserting any title thereto.

Third. In any event, the state cannot recover any more than the actual stumpage value of the timber at the place and time the same was taken.

The decision of the majority is based upon the theory that the title to the timber never passed from the state, for the reason that the logs were not removed from the land within the two years. To a correct understanding of the scope and purpose of the act, it must be considered in view of the law relative to the subject at the time it was enacted. It was the general rule, enforced in many jurisdictions, that the contract must expressly so provide, in clear and unmistakable terms, in order to prevent a purchaser of standing timber from going on the land and removing the logs after they were cut. To illustrate: In Sanders v. Clark, 22 Iowa, 275, the contract provided that the timber should be taken off the land by a specified time, and there was no reasonable excuse for the delay. In Pease v. Gibson, 6 Greenl. 81, the contract provided that the purchaser was to have two years in which to take the timber off the land. To the same effect, Reed v. Merrifield, 10 Metc. (Mass.) 155, where the provision was: "Said W. to have five years to get off said timber." In these three cases the question of the right to remove the timber which had been cut was not involved. That question, however, was involved in Gamble v. Gates, 92 Mich. 510, 52 N. W. 941, where the contract expressly provided that whatever timber should remain upon the lands after the time expired should revert and become the property of the grantor. In Kemble v. Dresser, 1 Metc. (Mass.) 271, 35 Am. Dec. 364, the contract

was as follows: "Is to get off and remove from said lot said wood and timber within two years from the date hereof, and not afterwards."

On the other hand, where the language of the contract is not explicit, and a purchaser cuts but does not remove the timber within the specified time, it is held that title to the timber so cut does not revert to the owner, but becomes the personal property of the purchaser, and he has the right to remove it within a reasonable time. Such is the case of Macomber v. Detroit, 108 Mich. 491, 66 N. W. 376, 32 L. R. A. 102, 62 Am. St. 713. The court there referred with approval to Golden v. Glock, 57 Wis. 118, 15 N. W. 12, 46 Am. 32, and to Hicks v. Smith, 77 Wis. 146, 46 N. W. 133, and said: "The rule of the Wisconsin court seems consistent with reason and justice. It is no stretch to treat the severance of the timber from the soil and its manufacture into logs as a removal, within the terms of the provision for forfeiture." In Golden v. Glock the contract reads: "It is agreed and understood  *  *  *  that the timber on the south half of the [premises described] shall be removed within one year from the date hereof, and the balance within two years"—and it was held that trees cut and manufactured into stave bolts within the time limited became personal property and were thereby removed from the premises within the terms of the deed, and that the grantee might, after the expiration of the two years, go upon the premises and take therefrom the manufactured product. In Hicks v. Smith the contract reads: "The said pine timber to be cut and removed from the above-described forties on or before January 1st, 1888"—and still it was held that all timber cut and severed from the soil by the purchaser before the date specified became his personal property, which he might remove within a reasonable time thereafter.

In our court the same principle was applied in the case of Alexander v. Bauer, 94 Minn. 174, 102 N. W. 387, where the contract provided that the purchaser had the right until a specified date to cut and remove the timber standing on the land. One portion was cut before the expiration of the time limited, and another portion thereafter, and the whole amount of the timber so cut was removed several months after the expiration of the time, and the court, basing its decision upon justice, reason and authority, held that the standing timber, when cut, was converted into chattel property, the ownership of which became

vested in the purchaser, with the right to remove the same, and that there was no implied condition that the title should revert if the duty to remove the timber was not strictly performed.

The author of chapter 163, p. 349, Laws 1895, had in mind these well-settled rules of law, and there was no intention to make any radical departure from them. It was, however, intended to protect the public from being filched out of its timber by the acts of careless or dishonest state officials. To that end that act centers upon two prominent features: First, the sale; and, second, payment. No sale of the state's timber shall take place until appraised, and then only at public auction to the highest bidder. An actual sale is contemplated, and elaborate means provided to secure the best obtainable price. Then comes a series of provisions to secure the payment, and twenty five per cent. of the appraised value must be paid in cash at the time of the sale. The permit issued by the auditor is not a part of the sale. It is a license to the purchaser to go upon the state's land upon certain conditions and cut and remove that which he has purchased. The permit is based upon a sale. The language used with reference to the permit requires no other construction than that applicable to private parties under similar circumstances, viz., the title passes when the trees are cut and the state thereafter retains a lien on the product until payment is made. The words, "Under no circumstances shall he cut or remove said timber, or any part thereof, after the expiration of such permit," must be construed in harmony with the evident purpose of the act. "Unless paid for" is implied.

There is neither reason nor justice in the position taken by the state. It insists that the purchaser enters into a contract (by purchasing at the sale) which he must fulfil; that he must pay for the timber, whether he takes it or not; that if he does pay for it, and at great expense converts it into a merchantable product on the land, and is engaged in the process of transporting it to the market, and by a sudden change in the weather the roads are ruined, and he is unable to use them until after the expiration of the time, yet the state may receive and retain his money and take advantage of an act of God to deprive him of the benefit of his labor. Not only that, but the state claims the right to stand by and permit him to come back, repair the roads, expend his time and money in transporting the logs to a distant

market, and then seize them after they have been doubled in value at the expense of the purchaser. No more manifestly unconscionable proposition has ever been called to my attention. If such a contingency should arise in a contract between citizens of the state, the courts would make short work of it upon equitable principles. Should the state prescribe for itself a rule of action which would not be tolerated in business transactions of its citizens? It is not necessary to resort to such an extreme in construing this act. The state is amply protected, without doing such violence to the language used. If it had been intended to go so far and to place purchasers at such a disadvantage, it would have been a very easy matter to have said so in direct and explicit language.

2. The reason why the logs were not removed prior to June 1 was stipulated and found by the court as follows:

"(9) That on account of the condition of the roads, the weather, and the inability of securing sufficient and reliable woodsmen and teamsters during the logging season of 1899–1900, it was not practical to haul all of said timber from said land, and that in removing from said land said 11,126 logs, containing 934,010 feet, board measure, after said first day of June, 1900, defendant believed that it had the right to do so under the permission of the said Kehl & Dearey and said state auditor. * * *

"(11) That the surveyor general of said district and the state auditor of the said state of Minnesota was each duly notified of the time when defendant would enter upon said land and remove said saw logs therefrom, and no objection was made to the removal of the same. * * *"

The court also found that all of the timber purchased and cut was duly scaled and paid for—one draft for $1,185.60, paid on June 2, and another for $1,939.72, paid August 1.

It does not distinctly appear whether the drafts were drawn prior to the first day of June, but it is clear that at the time they were drawn and paid the logs had been cut and skidded, ready for removal, and had not been removed for the reason above stated. The court further found that a representative of respondent, prior to June 1, called upon the state auditor and requested an extension of the permit for another year, and that he was informed by the auditor that the ex-

tension would be made, but no extension was ever executed. The timber commissioners were authorized by section 24 to make the extension requested by respondent's representative. The auditor himself did not have the power to make the extension; but, being the executive officer of the commission, it was natural that he should assume the duty of seeing that the timber commission complied with the request.

I am of opinion that the reasons found by the court why the logs could not be taken off were sufficient to justify the timber commission in granting the extension; that having been requested through its executive officer to make such an extension, having knowledge of the fact that the logs had been cut and could not be removed for the reasons stated, having acquiesced in the position assumed by respondent that it had a right to remove the logs after the first of June, having made drafts upon respondent for the logs so cut and not removed, and the same having been paid by respondent in good faith, and the state having received the money, the auditor and timber commission ratified the acts of respondent in paying the drafts and in subsequently removing the logs. Under such circumstances the state is estopped from asserting that it has any right, title, or interest in and to the logs in question.

This feature of the law was not involved in State v. Shevlin-Carpenter Co., 102 Minn. 470, 113 N. W. 634. In that case the timber was both cut and carried away after the expiration of the third logging season. The state officials had no authority whatever to renew the permit, and in such a case there can be no ratification or estoppel. But in this case the timber commissioners were expressly authorized to grant the extension, and the parties all acted in good faith upon the supposition that it had been extended.

Where discretion with reference to a particular matter is lodged in public officials, the state is bound by their acts, if performed within the general authority imposed. Under such circumstances it was not a fatal omission that the timber commission did not call a meeting and formally pass upon the matter. Its executive officer conveyed the information that the extension had been made. Sufficient reasons existed for making it, and with respect to such conditions the same rules apply as govern the conduct of private parties. "The state, in

all its contracts and dealings with individuals, must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject; but when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract in any form comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor, and suitor." People v. Stephens, 71 N. Y. 527, 549. The principle that public officials are not necessarily responsible to the state when acting in a discretionary manner is illustrated by the case of State v. Buchanan (Tenn. Ch. App.) 52 S. W. 480, wherein it was held that the governor, comptroller, and treasurer were not responsible for failure to forfeit a certain check which had been deposited in payment of state bonds.

3. The court found that respondent acted honestly, believing it had a right to remove the logs after the first day of June. Such being the case, the state cannot in any event recover any more than the actual value of the logs at the place and time they were taken. This question was thoroughly discussed in State v. Shevlin-Carpenter Co., 62 Minn. 99, 64 N. W. 81. In that case no valid timber permit had been issued, but the parties assumed that it was valid and cut the timber. It was held that the company was entitled to show that it had acted in good faith, and that it honestly and reasonably believed that it had a legal right to cut the logs, and, if good faith was established, then the value of the logs was to be assessed as of the time and place of the original taking. If respondent in good faith removed the logs involved, believing it had the right to do so, it cannot be charged with the value thereof as enhanced by its own labor in transporting them to a distant market.

On October 16, 1908, the following opinion was filed:

PER CURIAM.

In its petition for rehearing the defendant urged upon the court the following federal questions:

1. That the decision of this court was unconstitutional and void, as being in violation of and contrary to section one of the fourteenth article of amendment to the constitution of the United States, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," and the said decision deprives the respondent of its property without due process of law and denies it the equal protection of the laws, in violation of said constitutional provisions.

2. That said decision is unconstitutional and void, as being in violation of and contrary to the fifth article of amendment to the constitution of the United States, which provides that no person shall be "deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation," and the said decision deprives the respondent of its property without due process of law and takes its property for public use without just compensation, in violation of such constitutional provision.

3. The said decision is unconstitutional and void, as being in violation of and contrary to section 10 of article 1 of the constitution of the United States, which provides that "no state shall * * * pass any * * * law impairing the obligation of contracts," and the said decision impairs the obligation of the contract set forth in the findings herein, in violation of said constitutional provisions.

Upon consideration we have concluded to adhere to our original conclusion.

Denied.