## STATE EX REL. MURANE v. JACK

(No. 2038; August 17, 1937; 70 Pac. (2d) 888)

(Rehearing denied October 4, 1937)

174

For the relator there was a brief by *E. E. Enterline, Madge Enterline* and *W. J. Wehrli* of Casper, and oral argument by *Messrs. Enterline* and *Wehrli.*

For defendant, there was a brief by *Ray E. Lee,* Attorney General; *Thos. F. Shea,* Deputy Attorney General; and *Wm. C. Snow,* Assistant Attorney General and oral argument by *Messrs. Lee* and *Shea.*

RINER, Justice.

This case arises as an original proceeding in this court, speaking generally, in consequence of a disagreement between the defendant, Wm. "Scotty" Jack as State Auditor of the State of Wyoming, and the plaintiff, C. D. Murane, one of the District Judges of this commonwealth, concerning the proper interpretation of Chapter 66, Laws of Wyoming, 1933, which amended and re-enacted Section 30-114 W. R. S., 1931, prescribing the mileage expense to be paid state, county or precinct officers in Wyoming.

By this petition for a writ of mandamus the plaintiff has presented five alleged causes of action against the defendant. In substance, the first of these after setting out the official positions of the parties, states that the

178

plaintiff on April 4 and 5, 1937, used his own automobile in actually and necessarily traveling 104 miles from the City of Casper, where he resides, to and returning from the Town of Douglas, Wyoming, where he held a session of the district court; that thereafter, during the month, he presented to the defendant, for allowance and payment an itemized expense voucher for $13.32 for per diem and expense properly incurred in the discharge of official duties as District Judge, copy of such voucher being attached and made a part of the pleading.

This voucher discloses that the mileage account for the use of plaintiff's automobile in official business was reckoned at the flat rate of eight cents per mile; there is no attempt to itemize actual expense of gas, oil, etc. incurred in the trips taken.

It is then averred that thereafter, on or about April 30, 1937, the defendant unlawfully added $1.25 for additional per diem charge and deducted two cents per mile from the mileage charge submitted by plaintiff, issuing to plaintiff a warrant upon the State Treasurer, payable to the plaintiff's order, for the sum of only $12.49, which warrant plaintiff declined to accept, and shortly afterwards returned the same to the defendant; that said defendant notified the plaintiff that the sole reason for his action in reducing said claim for mileage was due to an executive order made by the Governor of Wyoming, effective as of April 27, 1937, whereby said defendant "was commanded by the Governor to disallow all claims presented to him by the District Judges of the State for mileage at the rate of eight cents per mile for traveling in their own automobiles, and to reduce said charges for mileage, if presented by the Judges at the rate of eight cents per mile, to six cents per mile", and to issue warrants to them accordingly; that although at all times a sufficient appropriation of funds by the State Legislature to meet such

expenses existed in the hands of the State Treasurer, and although demand therefor has been made, said defendant refused and still refuses to issue plaintiff a warrant for the sum claimed as aforesaid; and that plaintiff is without an adequate remedy at law.

The second cause of action, with similar allegations, except as to distances traveled and county seats visited on official business, rests upon a claim of the plaintiff for $61.60 and an allowance by the defendant thereon of only $52.45; the third cause of action rests upon his claim for $23.37 and an allowance thereon by the defendant of $20.34; the fourth cause of action is based upon his claim for $65.43 and defendant's allowance thereon of $58.76; and the fifth cause of action presents his claim for $12.07 and an alleged erroneous allowance thereon by the defendant of $9.99, this cause of action claiming also attorney's fees for the conduct of the litigation.

Plaintiff's petition concludes with a prayer for the issuance of a peremptory or alternative writ of mandamus directed to the defendant, as this Court should order. An alternative writ was accordingly issued, and in response thereto the defendant has filed a general demurrer to each of the aforesaid causes of action. Upon the issue of law thus presented argument was had, briefs have been submitted for the respective parties, and the matter is now for disposition.

The controversy before us arises, as already intimated, upon what construction shall be given the language of Section 1 of Chapter 66, Laws of Wyoming, 1933, which reads:

"That Section 30-114, Wyoming Revised Statutes, 1931, be amended and re-enacted to read as follows:
"Section 30-114. In all cases where a mileage fee or mileage expense is allowed to any state, county or precinct officer, it shall not exceed the rate of eight cents per mile, for each and every mile actually and necessarily traveled in the performance of the duties

of his office. In determining the mileage it shall be computed by the nearest practicable route. It shall be lawful for such officer to use his own automobile, or other conveyance, in the performance of such official duties. Before any claim for the service or use of such conveyance shall be paid, the claimant shall present to the State Auditor, or the Board of County Commissioners, as the case may be, for audit and payment, a duly verified claim made out in separate items, properly dated, and the value of each item specifically described, and showing to the full satisfaction of the auditing officer, or board, that such expense has been properly incurred for the benefit of the State or county, as the case may be, in the pursuance of the official duties of such claimant."

More concretely the phraseology of the first and third sentences of the quoted statute is the focal source of the trouble.

It is contended on behalf of the plaintiff that when the statute employs the words relative to mileage expense, "it shall not exceed the rate of eight cents per mile", it fixes a flat rate of eight cents therefor when the official uses his own automobile in the discharge of the duties imposed on him by law. It is insisted that this question was settled by the language of this court in the case of Taxpayers' League of Carbon County, Wyoming, v. McPherson et al., 49 Wyo. 251, 54 Pac. (2d) 897, 160 A. L. R. 767.

The case just mentioned came here upon reserved constitutional questions only. It was an action by the Taxpayers' League of Carbon County to recover of the defendants, the sheriff and the undersheriff of that county and the surety on the sheriff's official bond, certain sums of money which the League claimed had been overpaid as mileage to these officers by the County Commissioners of said County in connection with the use by them of their own automobiles in the course of their official duties. The provisions of Chapter 103, Laws of Wyoming, 1921, Chapter 54, Laws of Wyo-

ming, 1931, and Chapter 66, Laws of Wyoming, 1933, supra, were involved. Chapters 103 and 54 just mentioned each fixed a flat rate as compensation for the use by an official of his privately owned car in the discharge of the duties of his office, the first law setting the amount at fifteen cents and the second at ten cents, and the pertinent language of the former being: "It shall be lawful for such officer to use his own automobile, or other conveyance, and to receive compensation for its use at the rate of fifteen cents for each mile actually and necessarily traveled while in the performance of said official duty." Chapter 54 aforesaid merely substituted the smaller sum in place of the larger. We have quoted hereinabove in full the language of Chapter 66.

Plaintiff's petition in that case claimed simply that for the years 1931 and 1932 the sheriff and his subordinate collected five cents per mile in excess of the legal rate, the law having been changed from the flat rate of fifteen cents to that of ten cents during their then terms of office, and that during the years 1933 and 1934 they each collected two cents more than the law allowed, a change in the statute being made during their terms of office from the rate of ten cents flat to a rate which "shall not exceed the rate of eight cents per mile", as prescribed by Chapter 66, supra. We were only called upon to decide whether the compensation for the official use of their own automobile by county officers was an "emolument" which could not be increased or diminished after the election and appointment of such officers, as provided by Section 32, Article III of the Constitution of Wyoming; and also whether the constitutional prohibition against a change in salary or emolument after election or appointment of officials, as provided in said section of the Constitution, should be considered as a limitation upon the Legislature to provide for mileage expenses

after the election or appointment of such officer. Both questions were answered by this court in the negative.

After referring to "the law of 1921 and subsequent enactments of similar character", whereby the Legislature authorized the officer to use his own automobile, as it might be necessary or convenient in performing official duties, and provided he should be paid for that use "at the several stated sums per mile", and after pointing out in some degree the uncertainties and difficulties upon the employment of other than a flat rate per mile as reimbursement for such automobile use, it was said: "It seems to us entirely proper for the Legislature, under such circumstances, to fix an arbitrary lump sum, which they thought would fairly and ordinarily reimburse both state and county officers for such use." This seems to be the language especially relied upon by counsel as establishing their contention on behalf of the plaintiff. However, it is quite apparent that the point now urged was neither involved nor discussed in the litigation just reviewed, and the statements in that opinion were made with reference to the several statutes fixing a flat rate and the allegations of the petition which raised no question like that here under consideration. We may note, a somewhat similar result came about in State ex rel. Peck v. Velerde, State Auditor, 39 N. Mex. 179, 43 Pac. (2d). 377. There the law provided, "the maximum rates which may be allowed for travel by privately owned conveyance shall be six cents (6c) per mile," while the sheriff claimed reimbursement at the rate of twelve and one-cents per mile as a flat rate.

Regarding the contention that Chapter 66, hereinbefore quoted, must be construed as fixing a flat rate of eight cents per mile for the official use of privately owned automobiles, the language of the several earlier statutes on the subject (Chapters 103 and 54, supra,) is of assistance on the point raised when placed beside

that of the 1933 law on the subject. The previous enactment as we have seen made it lawful for an officer to use his own automobile or other conveyance and "to receive compensation for its use at the rate of fifteen cents for each mile actually and necessarily traveled" in performing his duties. Chapter 66 aforesaid, although it authorizes the use by an officer of his own automobile or other conveyance, yet prescribes that the mileage expense "shall not exceed the rate of eight cents a mile for each and every mile actually and necessarily traveled", etc. The variance of the phraseology of the last from that appearing in the earlier statutes is obvious. The two earlier statutes set inflexible fixed rates of reimbursement. The later law enacts that the reimbursement "shall not exceed" a fixed rate. Looking at the language of Chapter 66, supra, it seems reasonably impossible to say that it means exactly the same as the earlier statute, Chapter 54, Laws of Wyoming, 1931, referred to above and that its only variance is to bring about a reduction from ten cents to eight cents flat rate a mile. To so say would be to disregard the words "not to exceed", which qualify and limit the rate of eight cents per mile designed in the later law. This may not be done through the exercise of judicial authority.

The legislative intent always governs in construing a statute. Houghton Bros. v. Yocum, 40 Wyo. 57, 274 Pac. 10. That intent must be ascertained by reading it according to the natural import of the language used without resorting to subtle and forced construction. Board of Commisisoners of Weston County v. Blakely, 20 Wyo. 259, 123 Pac. 72. Then, too, as said in Opinion of the Justices, 275 Mass. 575, 175 N. E. 644, 646: "It is a familiar canon of statutory interpretation that every word of a legislative enactment is to be given force and effect so far as reasonably practicable. No part is to be treated as immaterial or su-

perfluous unless no other rational course is open." To the same effect is Sullivan v. Associated Billposters and Distributors of the United States and Canada, 6 Fed. (2d), C. C. A. Second Circuit, 1000, 1011, and cases cited.

What then do the words "not to exceed" mean? We are materially aided in answering this question through the result reached by the United States Court of Claims in the case of Atchison, Topeka & Santa Fe Ry. Co. v. The United States, 52 Court of Claims Reports, 338, and its final disposition at the hands of the National Court of last resort. In that litigation it appeared that by the Congressional Act of March 4, 1913, 37 Stats, 797, the Postmaster General was "authorized" to add to the compensation paid for mail transportation on railroad routes "not exceeding five per centum per annum", on account of increased weight of the mails due to the inauguration of the parcel post system. The Postmaster General in awarding compensation to railroads affected by the law allowed some of them the full five per cent additional amount; others were paid less than five per cent, and to some no additional compensation at all was made. It was contended on behalf of the plaintiff railroad company that "the purpose and the effect of said act were to provide for the payment to plaintiff of an additional of 5 per centum to the compensation it was receiving annually under its then existing contracts for transporting the mails"; in short, that a flat rate of five per cent increase was prescribed by the law. This view was upheld by the Court of Claims, but on appeal, in United States v. Atchison, T. & S. F. Ry. Co., 249 U. S. 451, 63 L. Ed. 703, the Supreme Court of the United States said:

"We are unable to agree with this conclusion. The language of the enactment is clear and we think it vested in the Postmaster General a discretion which,

so far as shown by the record, has not been abused. We are not unmindful of the burden imposed upon appellee nor of the circumstances which lend color to a different conclusion; but these are not sufficient to justify a disregard of the plain import of the words which Congress deliberately adopted."

And the case was reversed.

So when similar language appeared in contracts of insurance relative to the use and occupancy of a mill, fixing the insurer's liability at "not exceeding" $150 per day, it was contended for the mill owner, and the trial court held, that upon the mill being destroyed, the insured was entitled to the full amount of $150 for each day they were deprived of the use and occupancy thereof, regardless of the actual loss which had been sustained through inability to use the property involved. But this view was rejected by the Circuit Court of Appeals, Sixth Circuit, and a reversal ordered, the court saying in Stuyvesant Insurance Co. v. Jacksonville Oil Mill, 10 Fed. (2d) 54, that:

"An examination of the contract of insurance here in controversy, both as a whole and in its several parts, leads directly to the conclusion that the parties contemplated and intended an open rather than a valued policy. Any other construction does violence to the plain and unambiguous language employed. The term 'not exceeding' is of frequent use, and, in the absence of qualification, is usually, if not always, one of limitation only. These words, when found in an insurance policy as a part of the statement of the amount of insurance, necessarily mean that the liability of the insurer shall not be more, but may be less, than the amount stated. In other words, the term 'not exceeding' in a policy of insurance denotes that uncertainty of amount which is the chief characteristic distinguishing an open from a valued policy. Cooley's Briefs on the Law of Insurance, vol. 1, p. 823. * * * *

"The gross amount of insurance is stated to be 'not exceeding $10,000' ($13,400; in case of total loss the per diem liability of the insurance company is fixed

at 'not exceeding $150'; and in case of partial destruction of the plant the per diem loss is "to be estimated as that proportion of not exceeding $150 in which the assured's daily capacity is diminished.' The words 'not exceeding', in connection with the statement of the gross or maximum amount of insurance, is common to both open and valued policies, and hence has no special significance; but the construction of the policy for which defendant in error contends, and which was adopted by the trial court, requires the elision of such words from those parts of the instrument which set forth the conditions and extent of the insurer's liability. This cannot be done without running counter to the plainly expressed intention of the parties. The value of the use and occupancy of the insured premises during the period from the date of the fire to the 1st day of April of the following year constituted the actual loss suffered by the insured, for which, under the provisions of the contract, the insurers were liable, provided such actual loss did not exceed $150 per day for each and every working day during that period. Subject to this limitation, the amount of such loss should have been left to the jury to determine."

Certiorari was subsequently denied in the case by the Supreme Court of the United States. See 276 U. S. 634, 635, 48 Sup. Ct. 420, 72 L. Ed. 743.

Furthermore, in the case at bar it could not properly, and we do not understand it to be in fact contended that Chapter 66, supra, allows a flat rate of eight cents a mile when an official travels on the railroad or on a bus, where the rates charged passengers are far below the sum of eight cents per mile. Yet the statute authorizes such official to use the "other conveyance", including, of course, the railroad train and the bus, as well as "his own automobile". The statute does not appear to make any distinction between these several modes of conveyance as to what the reimbursement of the official who uses them shall be for the use thereof. It seems to be conceded by all parties hereto that in the case of railroad and bus transportation, the officer

employing them for traveling is entitled to receive only his actual expenses. That has been the unaltered departmental practice over the years so far as we are advised. In view of the authorities above cited and assigning its usual and ordinary meaning to each word employed in the law, we are obliged to conclude that the Legislature intended that an official using his own automobile in performing the duties of his office should likewise for that use receive only his actual expenses. Such a consideration, we think, avoids doing violence to the plain terms of the Act.

It is of some significance, too, perhaps, that the same Legislature, at a special session, held also in the year 1933 (Chapter 12, Special Session Laws Wyoming, 1933) in providing for a per diem expense for state officials, including district judges, declared in the first sentence of Section 1 of that Act that, "When any state officer or employe is required to travel on business of the state he shall be entitled to receive in addition to actual transportation expenses a per diem expense as follows:" In 1935 the Legislature amended and reenacted Section 30-407 W. R. S., 1931, relating to the mileage of County Attorneys in this wise:

"When any county attorney may be called upon to render services for the county pursuant to law, outside of the county, or within his county at a distance of more than ten miles from the county seat, and away from his own residence, he shall receive his actual and necessary traveling expenses, not to exceed ten cents per mile, in attending to such services, in addition to his salary as county and prosecuting attorney."

Here again we especially note the language "he shall receive his actual and necessary traveling expenses, not to exceed ten cents per mile." While the Legislature appears to have deemed the limit of eight cents, fixed by Chapter 66, supra, should be enlarged somewhat for county attorneys, nevertheless the law-making body expressly said that the actual and necessary

expense incurred by such officers should be what they should receive for mileage reimbursements. No reason is perceived why the county attorney should receive his actual expense in mileage while other county officials, acting under Chapter 66, supra, should receive a flat rate as mileage for the use of their own automobiles, as argued by plaintiff. The Legislature doubtless thought that actual mileage expense is what should and did govern in all such cases.

It was urged at the argument that the practice has been for the County Commissioners of the several counties of this State to allow county attorneys a flat rate of ten cents per mile for all official automobile mileage, regardless of the actual expense they incurred. But we find it said, upon abundant and undoubted authority, in 59 C. J. 1024; "Moreover, no matter how long the usage has been established, or how general the acquiescence in the customary construction, it will not be permitted to override the plain meaning of a statute." And at Pages 1030-1031 of the same text we read, "the courts are not bound to follow, or justified in following, an executive construction which is clearly erroneous."

The Attorney General and his official assistants, upon whom rested the duty of appearing on behalf of the defendant, seem to have adopted the view of the statute we have announced above delineating its proper construction. They so argued upon the hearing, and in their brief submitted to us on behalf of the defendant herein they say, "A more reasonable interpretation of such statute is that a state official operating an automobile in the performance of his official duties is to be allowed his actual expenses of transportation, but that in any event, such expense shall not exceed eight cents per mile."

It appears to be additionally contended, however, by counsel for the defendant, notwithstanding the posi-

tion thus taken as embodied in the quotation above given, that the Governor of this State has authority to fix mileage rates for the State officers who use their own automobiles in the transaction of official business and that the order described in plaintiff's petition was legal. This is argued by implication supposedly from the broad general executive power vested by the Constitution in the Governor of Wyoming, the fact that Section 36 of Chapter 148, Laws of Wyoming, 1937, provides that the total contingent appropriation for all of the district judges of this state shall be the lump sum of $15,600.00, and the provisions of Section 53 of the Chapter last mentioned, which reads:

"On or before the 15th day of March, A. D. 1937, the officer, department, board or state institution, receiving an appropriation under this Act shall submit to the Governor of Wyoming an itemized budget showing the detailed estimated expenditures in accordance with the classifications set up in the 1937 budget. The Governor is hereby authorized to approve, disapprove or alter the estimated expenditures according to classification but in no manner to increase the total amount of the appropriation. He shall transmit a copy of such amended budget to the Board of Supplies of the State of Wyoming."

Section 16-119 W. R. S., 1931, is likewise mentioned as supporting the contention made, and that section is as follows:

"After the approval of any appropriation by the Legislature for the Judicial Department, the several administrative departments (excepting the Auditor), boards and commissions of the State Government, and institutions within the State, it shall be unlawful to expend any such appropriation or any part thereof except in accordance with such estimate or the specific appropriation thereunder unless the same be revised with the approval of the Governor in writing."

Upon careful consideration we are obliged to reach the conclusion that this additional contention submit-

ted on behalf of the defendant is utterly irreconcilable with the other position taken by his counsel as indicated by the statements above quoted from their brief. Once it is conceded or determined that Chapter 66, supra, enacts that plaintiff shall receive his actual expense, not to exceed eight cents, incurred in the use of his own automobile, no authority, except the Legislature itself, may change that statutory mandate thus declared. We find no existing law where the Legislature has made any such change.

Additionally, it may properly be said that the several cited provisions of the statutes relating to the budget system of the State, including Section 53 of Chapter 148, quoted above, deal solely with estimated expenditures in gross and are limitations upon expenditures in gross, as those are fixed through specific appropriations made by the Legislature. No statute has been called to our attention which in terms, or even by remote implication, authorizes any officer of the State of Wyoming to alter or fix the mileage rate for reimbursement of state officers for the use of their own automobiles in the course of official business. Indeed, it would be rather strange if there were such an enactment, when the law-making body, established by our State Constitution, has itself prescribed exactly what shall be the rule in such case. It necessarily follows that the contention thus made on behalf of the defendant is quite untenable.

The defendant apparently, for two reasons, has not in due course audited the claims of the plaintiff so far as it appears by the latter's petition in this case, which necessarily is all we may at this time consider in connection with the demurrer thereto.

The reasons which that pleading discloses are: (1) An erroneous view of the law to the effect that the Auditor was bound by the alleged order of the Governor fixing a flat rate for mileage at six cents per mile

for all judicial officers of the State; and (2) An inability to audit the submitted claims properly inasmuch as plaintiff did not present them in form showing his actual expenses incurred, i. e., for gas, oil, grease, and other expense, as the law requires. We have no doubt that when proper claims are presented setting forth plaintiff's actual expenses, they will receive just and fair consideration at the hands of the Auditor. We have no reason to think that he will deprive the plaintiff of reimbursement for the actual expense, not exceeding eight cents per mile, he has incurred in taking the trips necessary to perform his judicial duties. To do so would be an abuse of discretion on the part of the Auditor and subject to correction here, as indicated in State ex rel. Jeffrey v. Burdick, Auditor, 3 Wyo. 587, 28 Pac. 146.

The only question to be resolved by the defendant in his official capacity as to the claims of the plaintiff here under consideration, is; What were Judge Murane's actual expenses in using his own automobile on the specific trips described in his claims, which were taken on official business, as the law authorized him to do? Relative to this point, the Auditor has a right to exact reasonable and due legal proof. The average cost of operating other cars at other times and with other drivers is not controlling.

On account of the difficulty in determining actual costs in the operation of an automobile, as pointed out to some extent in Taxpayers' League of Carbon County, Wyoming, v. McPherson, supra, we are inclined to think it would be productive of less trouble in a due administration of the law if a flat rate of either four, six or eight cents—whatever amount the Legislature might upon careful investigation deem an approximately accurate figure to reimburse in most instances for the necessary outlay in cases of this kind—for the

use of an officer's own automobile in the performance of his duties, had been adopted by the Legislature, as was done in previous laws. This, however, the Legislature did not see fit to do. We have no choice but to construct the enactment as we find it. We are mindful of those legal principles operative in statutory construction, so concisely and clearly stated decades ago in United States v. Fisher, 2 Cranch 358, 2 U. S. (L. Ed.) 304, by Chief Justice Marshall, thus:

"Where rights are infringed, where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects. But where only a political regulation is made, which is inconvenient, if the intention of the legislature be expressed in terms which are sufficiently intelligible to leave no doubt in the mind when the words are taken in their ordinary sense, it would be going a great way to say that a constrained interpretation must be put upon them, to avoid an inconvenience which ought to have been contemplated in the legislature when the act was passed, and which, in their opinion, was probably overbalanced by the particular advantages it was calculated to produce."

See also 59 C. J. 969 and cases cited; 25 R. C. L., Section 260, Pages 1025-1026.

As a result of our views concerning the proper construction of Chapter 66 of the Session Laws of 1933, it is apparent that the petition of the plaintiff could not be amended to supply the facts necessary to be alleged, viz., a presentation of the claims involved based upon actual expense of the plaintiff incurred in the use of his own automobile on official business. The demurrer of the defendant to plaintiff's petition will accordingly be sustained, the peremptory writ of mandamus denied and a judgment of dismissal entered. Inasmuch as

both parties were in good faith mistaken as to the proper interpretation of the law involved, it will be ordered that each shall pay his own costs.

*Dismissed.*

BLUME, Ch. J., and KIMBALL, J., concur.

### ON PETITION FOR REHEARING

RINER, Justice.

A petition for rehearing has been filed in this case by the plaintiff. Counsel say that they cannot "understand how the question of itemization of the claims got into the lawsuit." We were obliged to give that matter consideration for three reasons. First, because Section 1 of Chapter 66 Laws of Wyoming, 1933, the statute directly involved in the lawsuit, expressly provides among other things,

"Before any claim for the service or use of such convenience shall be paid, the claimant shall present to the State Auditor, or the Board of County Commissioners as the case may be, for audit and payment, a duly verified claim made out in separate items, properly dated, and the value of each item specifically described, * * *";

second, because it appeared plain from plaintiff's pleading that the claims for automobile expense presented by him to the State Auditor were not itemized; and third, inasmuch as we were of the opinion that the law contemplated reimbursement for actual automobile expense incurred and not a flat rate reimbursement as contended by plaintiff, the only way an intelligent check of any expense could be made would be upon an itemization thereof presented to the auditing officer. The third reason given above was undoubtedly the basic reason why the Legislature framed the law as it did, requiring itemization.

Many arguments are advanced in support of the petition for rehearing which point out the difficulties of administration of the law on account of its requirement of reimbursement for actual expense only, as well as the inconvenience it imposes upon those affected by it. These are matters to which the Legislature, upon an amendment of the law being sought, might very well give careful attention, but they afford no legal reason for adding to or eliding from the statute words or phraseology in order to make the law over into a form this court might think would be best for all concerned. As already intimated in the original opinion herein, and as said by the Supreme Court of Minnesota in State v. Rat Portage Lumber Company, 106 Minn. 1, 115 N. W. 162, 117 N. W. 922.

"It is not, however, in the power of courts to avoid legislation because it may seem drastic or inexpedient. It is not their function to supervise what the Legislature sees fit to do, or to enforce only such Session Laws as appear to be wise. It is not within their power to alter them because of hardship involved in their application to particular circumstances. When the Legislature has the constitutional power to enact a given law, and it properly frames an act clearly expressing a legal intent, it is the duty of the courts to construe that act so as to effectuate it."

If, as argued by counsel, proof cannot accurately or at all be made of some items of expense which the owner of an automobile employed in state business might think proper to claim, we are unable to say that the Legislature did not consider such possibility and by enacting the law in the language used place the stamp of its disapproval upon items of this character. Indeed, it is common knowledge that a great many members of the Legislature owned and operated automobiles and hence were thoroughly familiar with the various kinds of expense necessary to be incurred in the operation of such vehicles.

The petition for rehearing should be denied and an order will be entered to that effect.

*Denied.*

BLUME, Ch. J., and KIMBALL, J., concur.