355 P.2d 371 (1960)
James A. WARD and Nellie V. Ward, Appellants (Contestees and Petitioners below),
v.
Oscar T. YODER, Fox Creek Land and Livestock Company, Charles F. Swarm, Daniel Jensen and Bill W. Poage, Appellees (Contestants below).
In the Matter of Proceedings in re Abandonment of Water Rights, Priority No. 19, Priority No. 28 and Priority No. 56 from Bear Creek.
No. 2926
Supreme Court of Wyoming.
September 15, 1960.
*372 James A. Greenwood and John F. Lynch, Cheyenne, for appellants.
George P. Sawyer, Stanley K. Hathaway, and Hathaway & Sigler, Torrington, for appellees.
Before BLUME, C.J., and PARKER and HARNSBERGER, JJ.
Mr. Justice PARKER delivered the opinion of the court.
Contestants Yoder, Swarm, Jensen, Poage, and Fox Creek Land and Livestock Company under the provisions of §§ 41-47  41-52, W.S. 1957, sought a legal declaration of abandonment before the Board of Control against contestees, James A. and Nellie V. Ward, of three water rights adjudicated July 7, 1891, priorities 19, 28, and 56. The Board of Control referred the matter for hearing to the superintendent of Water Division No. 1 who took testimony and caused a transcript to be made and submitted to the board together with his report. The board upon final hearing of the matter took additional evidence and thereafter issued findings and order declaring water rights under priorities 19, 28, and 56 abandoned. The contestees filed in the District Court of Goshen County a petition for de novo hearing under the provisions of § 41-53, W.S. 1957. This hearing resulted in a judgment affirming the action of the Board of Control. Contestees have now appealed such judgment as it relates to the declared abandonment of water right under priority 19.[1] Counsel at the time of the argument here stated that priorities 28 and 56 were not before the court and not in issue. Accordingly, the judgment of the trial court is fully effective as relates to these two priorities. Fox v. Fox, 75 Wyo. 390, 296 P.2d 252; 5B C.J.S. Appeal and Error § 1801.
The facts germane to this case are not complicated. The petition alleges and the answer admits that the Wards "are the successors in title to the first owner of the ditch known as the Ontario Ditch diverting water from Bear Creek under Priority No. 19 as adjudicated by a Decree of the District Court of the First Judicial District dated the 7th day of July, 1891, the headgate of which is located in the SW¼ SW¼ of Section 1, T. 19 N, R. 62 West of the 6th P.M., for irrigation of 1000 acres of land owned by them and not described by said Adjudication Decree." So far at the testimony shows, there was no separate acquisition by the Wards of the ditch and neither it nor water right under priority 19 was mentioned at the time of the purchase. Each of the contestants has rights in the same water source with priorities subsequent to 19 and in the order of established priority would be entitled to the water under 19 if such right were declared to be abandoned.[2] Contestants by the petition alleged, and contestees now freely admit, that no water had been applied from the original *373 point of diversion to the Ward land through the Ontario Ditch for the five years preceding the filing of the petition, and in fact, for approximately thirty years. The ditch had grown full with vegetation, and at one point there was a service station over the old bed which would have prevented water being transported therein. Contestees rely upon evidence which they say shows water under priority 19 to have been carried by means of the Babbitt Ditch which was two and a half miles downstream from the Ontario Ditch and used upon the Ward land regularly each year since 1948. Thus, under their view they have put water of priority 19 to beneficial use within the five years preceding contestants' action before the Board of Control. They urge that there is only one issue before the court, namely, Is there substantial evidence in the record to support the declaration of abandonment of contestees' water right under priority 19?
Counsel for the parties stipulated that all documents, exhibits, transcripts of evidence, and pleadings, constituting the record of the hearings before the superintendent and the Board of Control should be considered by the trial court upon the hearing, and an order of the court was accordingly made. We look then to the record of these proceedings to ascertain whether or not there was substantial evidence which would support the trial court's judgment.
By uncontroverted evidence it appears that in 1948 the Wards purchased for $10.25 per acre 1,200 acres of land  1,000 acres of which had been subject to irrigation by means of the Ontario Ditch under priority 19 of the July 1891 adjudication decree and 10 acres of which had been subject to irrigation by means of the Babbitt Ditch under priority 18 of the same decree. Ward's annual assessment schedule signed by him under oath showed the ten acres as irrigated and the remainder of the land as dry. No attempt was made to run water from the point of diversion through the Ontario Ditch in the succeeding years until 1958, and several of the contestants asserted that they had been under the impression that the water right had been declared abandoned some time previously. In the spring of 1958 Ward pulled a ditcher through the portion of the Ontario Ditch lying on his own land and indicated to certain of the neighbors that he intended to open the ditch across their land. Before he had been able to take any substantial steps toward that end, he was advised by the contestants that his contemplated work would be considered as trespassing, and after some discussion he desisted.
The testimony of various witnesses was positive that from 1948 to 1958 there had been no irrigation by Ward under priority 19, but close analysis indicates that some of these witnesses had been present only a part of the period, some merely said that they had not "observed" irrigation, and others admitted that they meant that no water under priority 19 had been taken through the Ontario Ditch.
Contestees in urging that there is no substantial evidence in the record to support the judgment of the trial court point out Ward's testimony that during each year from 1948 to the date of the hearing he irrigated his land under priority 19 through the Babbitt Ditch.[3] They insist that there was no proof whatever that the Wards either abandoned or intended to abandon the water right under priority 19. In the light of the difficulty of proving the intent to commit any act and of the practical impossibility of identifying irrigation water as to source, the contestees propose to give themselves an insurmountable advantage by making the abandonment hinge solely upon the testimony of Ward. They contend that his testimony stands uncontroverted and unimpeached. We are fully cognizant of the rule which we pronounced in Beck v. Givens, 77 Wyo. 176, 309 P.2d 715, 313 P.2d 977, that a trial court may not arbitrarily disregard uncontradicted and unimpeached testimony, but this does not alter the right of such court to disregard it if it is evasive, equivocal, improbable, impossible, *374 or inconsistent with other testimony. The trial court was not in a strait jacket which required it to accept without question any of the testimony as fact. It was the sole judge of the credibility of the witnesses and was entitled to interpret the evidence. This included not only an evaluation of what was said by the witnesses who appeared in person before the court but also an analysis of what had taken place at the previous hearings.
At the hearing before the superintendent, Ward was subjected to considerable cross-examination regarding use of the water and did not at any time contend that he had irrigated through the Babbitt Ditch land except the 10-acre tract (entitled to be irrigated under priority 18). When asked if he had ever done anything with regard to getting water out of Bear Creek under the Ontario right he answered, "Well, I have always maintained part of the ditch that is on our land." Further questioning elicited the information that he used this portion of the ditch to carry mountain run-off which he considered to be a part of Bear Creek. He was asked, "Why have you waited for nearly ten years to do anything with your water right you say you have?" He answered, "It takes time to get things done and our ditch has got to be changed, re-built and it takes some time to determine which way to do that." Being interrogated about the effect that his taking of the water would have upon water rights above him, he was asked, "They have been irrigating their land and you haven't." He answered, "There has been times some of them hasn't irrigated their land over a period of years."
An analysis of the evidence submitted before the superintendent reasonably shows that there had been no use of the Ontario Ditch for many years, and that the portion of it which crossed Ward's land had been kept up during his ownership in order that mountain run-off could be utilized.
At the final hearing before the Board of Control the picture had entirely changed. There Ward testified at some length about his diversion of water under priority 19 through the Babbitt Ditch and the application of it on his land. As to the extent of beneficial application, he said that the amount he diverted ran from one to five second feet;[4] when asked about how many acres he irrigated, he said, "Well, I wouldn't say I irrigated 40 acres every year. I only irrigated a portion of it." After indicating that he did not advise the State Engineer of a change in the point of diversion, he was asked if he had advised anybody of that fact and answered, "I just ordered it from the water commissioner and he didn't object."
At the district court hearing, Ward's evidence had again changed. He then claimed to have talked with Bishop, the State Engineer, and to have had authority from him and the former water superintendent, Nolton, to "take water of the Ontario through the Babbitt Ditch." He admitted that he had become water commissioner in 1953, turning his own water on and off after that time, and said that he irrigated from 40 to 60 acres a year under priority 19 through the Babbitt Ditch.
At first blush it might be thought that the testimony of Bishop and Nolton bears out the present contention of the contestees that they actually made a diversion of priority 19 through the Babbitt Ditch, but on closer analysis this is not the only interpretation which might be placed on that evidence. The State Engineer said that he recalled having talked with Ward and Nolton, discussing whether or not the Ontario right could be diverted for use through the Babbitt Ditch; he said, "I advised Mr. Nolton it was a matter for him to handle after looking over the ground and advise what to do about it," but that the matter never came back to him for ruling. Nolton said he had seen Ward irrigate land covered by *375 the Ontario right out of the Babbitt Ditch in 1954. He admitted that he could not tell whether the water used was from the Babbitt or the Ontario right, and his testimony referred to the size of the field where the irrigation was done rather than to the amount of land which he saw irrigated. He said that he and Ward had discussed the matter of diversion with the State Engineer, but his testimony as to any steps that were taken following this conversation is indefinite, and would reasonably be consistent with the present contention of either of the parties.
No one could well contend that Ward's statement regarding the beneficial use of water under priority 19 from 1948 to 1958 was the same at the hearing before the superintendent and at the trial in the district court, and the trial court had the right to interpret the varying testimony at the different hearings as self-contradiction. Ward was provided with numerous opportunities in the hearing before the superintendent to assert the contentions which he now makes, but at that time he failed to refer to any beneficial use of priority 19 through the Babbitt Ditch.
"A failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact. * * *
"* * * Omissions to assert anything, or to speak with such detail or positiveness, when formerly narrating, on the stand or elsewhere, the matter now dealt with [is an example of such failure]." 3 Wigmore, Evidence, 3d ed., § 1042.
See 32 C.J.S. Evidence § 1038.
The court was fully justified in accepting as true the statement which Ward made before the superintendent as being the truth and in considering his later statements as self-contradictory. His earlier statements are entirely consistent with the evidence of the contestants which showed that there had been no use of priority 19 through the Ontario Ditch and indicated inferentially that there was no use whatever of the right during the years in question.
Contestees argue that before an abandonment under § 41-47, W.S. 1957, could be declared it was essential to prove intent. They cite no cases which support this claim. It is true that this court has on two different occasions broached the subject but in each found resolution of the point unnecessary to a determination of the cause. In Wyoming Hereford Ranch v. Hammond Packing Co., 33 Wyo. 14, 236 P. 764, the matter was referred to only casually; but in Van Tassel Real Estate & Livestock Co. v. City of Cheyenne, 49 Wyo. 333, 54 P.2d 906, 910 (certiorari denied 299 U.S. 574, 57 S.Ct. 38, 81 L.Ed. 423), the court discussed the necessity of proving intent to find abandonment and went on to say:
"* * * But in many of the states, including our own, a statute of nonuser or forfeiture (which, however, is strictly construed, Kinney, Irr., [2d Ed.] § 1120), has been enacted, in which case it is generally, though not universally, held that the element of intent is not necessary. * * *"
Undoubtedly, the holding mentioned there represents both the majority and the logical view. Leading authorities on water rights confirm this:
"* * * in many of the States of the arid and semi-arid West, and especially in those jurisdictions which have passed recent irrigation codes, providing for the State control of the waters within their respective jurisdictions, are to be found provisions declaring to the effect that a failure to comply with the specific provisions of the Acts in question within the times specified works a forfeiture of all rights of the claimant to the uncompleted portions, or to the unused water claimed. Under these provisions a forfeiture of the rights of the claimant is worked by the failure to commence the work of construction, for the failure to prosecute the work with reasonable diligence, for the failure to finally complete the works, and, *376 finally, for the failure to apply all of the water claimed to some beneficial use or purpose, within the time specified by the statute. Also, after the works have been finally completed and the appropriation finally consummated by the application of all of the water claimed thereunder to some useful purpose, the failure thereafter to use all of the water so claimed for a specified time provided by the statute works a forfeiture either to all of the rights or to the portion so unused, and that, too, regardless of the intent not to abandon. The State of Wyoming led off with these laws of State control, and in 1888 it was provided by statute that `The failure to use the water for a period of two years should be deemed an abandonment.' * * *" 2 Kinney, Irrigation and Water Rights, 2d ed., p. 2022. (Emphasis supplied.)
After noting the Wyoming statute, 1 Wiel, Water Rights in the Western States, 3d ed., p. 620, compares it with similar laws in other Rocky Mountain States, and says:
"Such statutes as these will probably be construed in the light of Smith v. Hawkins [120 Cal. 86, 52 P. 139, 19 Morr.Min.Rep. 243], as providing for forfeiture in invitum, regardless of intent not to abandon. They preserve the possessory test (possession of the stream with a bona fide intent) for a definite period of years, but not after that."
See 93 C.J.S. Waters § 193c, p. 998.
Even were these authorities less emphatic as to the unimportance of intent in statutory forfeiture of water rights, we would be reluctant to insert the word "intent" in a statute where the legislature has seen fit to omit it.
In State ex rel. Murane v. Jack, 52 Wyo. 173, 70 P.2d 888, 71 P.2d 917, 112 A.L.R. 161, we gave effect to the rule that where the legislature has constitutional power to enact a given law and properly frames an Act it is the duty of the court to construe it for proper effectuation without adding to or eliding from the words recited.
"Words may not be supplied in a statute where the statute is intelligible, without the addition of the alleged omission * * *." 2 Sutherland, Statutory Construction, 3d ed., pp. 457, 458.
See Spear v. Respro, Inc., 85 R.I. 272, 129 A.2d 785; Welsh v. Kuntz, 196 Md. 86, 75 A.2d 343; and Boehrs v. Dewey County, 74 S.D. 75, 48 N.W.2d 831.
The discussion of the Idaho court in Carrington v. Crandall, 65 Idaho 525, 147 P.2d 1009, undoubtedly enunciates the correct rule governing statutory forfeiture of water rights. Therein at 147 P.2d 1011, the court after referring to a so-called "abandonment" statute (§ 41-216, I.C.A., 1932), reading in the essential part as follows, "All rights to the use of water acquired under this chapter or otherwise shall be lost and abandoned by a failure for the term of five years to apply it to the beneficial use for which it was appropriated," said:
"It has been held that, under a statute like ours, proof of intent to abandon is not required where reliance is placed on a nonuser for the full period of five years as prescribed by the statute. In Lindblom v. Round Valley Water Co., 178 Cal. 450, 173 P. 994, 996, the Supreme Court of California said: `Under section 1411 [which reads: "The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such a purpose, the right ceases"] * * * however, nonuser ends the right, regardless of the appropriator's intent.'
"What has just been said relates to forfeiture (abandonment as it is designated by the statute, sec. 41-216, I.C.A.). While the statute designates it as `abandonment', it is in fact a statutory forfeiture. * * *"
We think that intent is not essential to a forfeiture under the provisions of § 41-47.
*377 Contestees' argument that the failure to use the Ontario Ditch is not proof of abandonment of priority 19 does not require discussion since the trial court had before it substantial evidence which tended reasonably to show that the failure to use the ditch was in fact an abandonment of the water right and that there was no beneficial utilization of priority 19 through the Babbitt Ditch.
A reviewing court in a case of this nature is not in a position interpret and evaluate the evidence but instead is obligated to determine whether or not such evidence presented a substantial basis for the trial court's holding. In the present case the direct and circumstantial evidence considered together constitute a substantial basis for the judgment.
Affirmed.
NOTES
[1] Sometimes referred to as the Ontario right since the original decree provided that the Ontario Ditch was the means for appropriating the water under priority 19.
[2] Priorities of contestants' rights are pleaded in the petition and stipulated by contestees at the hearing before the superintendent.
[3] In the original decree designated as the means for utilizing priority 18.
[4] Section 41-181, W.S. 1957, contains a provision "that no allotment for the direct use of the natural unstored flow of any stream shall exceed one cubic foot per second for each seventy acres of land for which said appropriation shall be made."