**In the Matter of Parental Rights to C. M.,\***
**a minor child.**

**L. and L., Appellants (Respondents below),**

**v.**

**BIG HORN COUNTY DEPARTMENT OF PUBLIC ASSISTANCE AND SOCIAL SERVICES, Appellee (Petitioner below).**

**No. 4619.**

Supreme Court of Wyoming.

Nov. 24, 1976.

---

\* In order to avoid embarrassment or harm to the parents and child, the full names of the parties have been omitted from the title and the opinion but appear in the files of this court and district court.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, University of Wyoming College of Law, Laramie, James W. George, graduate law student, and Otis W.

Beach, Greybull, with oral argument by James W. George, for appellants.

Craig Newman, Sp. Asst. Atty. Gen., Cheyenne, Nancy G. Hinckley, Deputy County Atty., Big Horn County, Basin, for appellee.

Before McCLINTOCK, RAPER, THOMAS, and ROSE, JJ., and PEARSON, District Judge Ret.

PEARSON, District Judge Ret.

This action was initiated by the Deputy County and Prosecuting Attorney, Big Horn County, under the provisions of §§ 14–53 through 14–58, W.S.1957, seeking termination of parental rights to the parents' infant child. After a hearing at which evidence was presented by the county attorney and the parents through a court-appointed attorney, the trial court ordered termination of the parental rights of both parents, and the parents appeal.

The order of the trial court, after stating jurisdictional grounds, made findings of fact as follows:

"It appearing to the court that * * * [L. and L.] are unfit parents by reason of their unintentional neglect of * * * [C.M.]. The Court further finds that because of the incapacity and inability of the parents, they have been guilty of neglect under Wyoming Statute § 14–53 (1957). The court further finds that this neglect is unintentional, but because of the inability of the parents to cope and understand, this neglect will continue, making them unfit parents to raise the child.

"The Court further finds that the welfare and interests of * * * [C.M.] are the paramount consideration, and the parental rights of * * * [L. and L.] should be terminated.

* * * * * *

"1. It is for the best interests of the minor child, * * * [C.M.], that the parental rights of * * * [L. and L.], the natural parents of such child, be and are hereby ordered terminated for the

reason that the parents are unfit by reason of their unintentional neglect of the child.

"2. That the permanent care, custody and control of such child be transferred to the Director of the Big Horn County Department of Public Assistance and Social Services, and that such Director is hereby appointed the guardian of the person of * * * [C.M.]."

Three issues are presented by appellants as grounds for reversal:

"ARGUMENT I

"The proper burden of proof which the state must carry in a termination of parental rights proceeding in Wyoming under Section 14–53, Wyo.Stat. (1957) is one of clear and satisfactory evidence. The court should adjust the standard to one of clear and convincing evidence. Under either standard the state did not carry its weighty burden, and the lower court erred either by applying a preponderance of the evidence standard or by handing down a decision against the weight of the evidence. A general practice physician who has neither administered psychological tests nor extensively interviewed his patient for the purpose of determining the patient's mental age is not competent to give an expert opinion as to the patient's mental age.

"ARGUMENT II

"Section 14–53, Wyo.Stat.(1957) does not provide for the termination of parental rights because of unintentional neglect, and the Wyoming Supreme Court should not judicially legislate in the area by expanding the statute to include such a situation.

"ARGUMENT III

"Psychological studies on mentally retarded married parents who have a harmonious marital relationship indicate that they can adequately rear children, especially when they are accorded proper outside support."

We will consider the issues in reverse order:

■ Argument III is a resume of three psychological studies of selected mentally retarded married parents and their capabilities and success in the care of their children. Each study finds numerous successful cases. At best, all conclude that based on the degree of mental retardation and other specified factors, some mental retardates are satisfactory parents. Each is based on its own factual situation. While such studies may be of interest to those engaged in that phase of psychology they offer no assistance in determining the cases brought under the provisions of the Wyoming Statutes and require no further consideration by this court.

Argument II asserts that the trial court failed to properly apply the requirements of the law, judicially amending it by the finding of "unintentional neglect." The pertinent parts of the statutes involved in this proceeding are:

"§ 14–53. * * * Whenever it shall appear to any district court of this state * * * that any parent is unfit by reason of his or her abuse or neglect of any such child, the court shall have jurisdiction to transfer the permanent care, control and custody of such child to some other person, agency, or institution, and may terminate all rights of such parent with reference to such child.

"§ 14–56. * * * Upon conclusion of the hearing, if the court determines that it is for the best interest of the child that the rights of his parents with reference to said child be terminated, the court shall thereupon appoint a suitable person to serve as guardian of the person of the child."

This argument is based on the interpretation to be placed on the language "that any parent is unfit by reason of his or her abuse or neglect of any such child." Appellants contend that the finding of "unintentional" neglect, because the word unin-

tentional is not used in the statute, is an addition of a ground for termination of rights constituting an amendment to the statute by judicial legislation.

 There is no doubt, and appellants concede, that the state has the power to adopt legislation to regulate and terminate parental rights in proper cases and upon valid grounds. One of these grounds in almost universal use is "neglect." It is a word of common usage and understanding and can certainly be defined as a failure to do what is needed or required in connection with a factual situation. Appellants argue that the statute does not specify "unintentional neglect" and that approval by this court of the trial court's use of the words "unintentional neglect" would amount to an expansion of the statute by judicial legislation. The statute does not specify "unintentional neglect," "intentional neglect," nor "careless unattentive neglect." The trial court obviously found the parents unable, because of mental incapacity, to give the child proper care now or in the future and that such inability constituted neglect. If the facts in this case justify such a conclusion, we cannot agree that judicial legislation is in any way involved. We are considering the best interests and welfare of a child rather than the penalizing of parents. Neglect is neglect, no matter what the cause may be. Indeed, neglect from careless acts could be corrected and cured, as could intentional neglect. With the evidence here indicating there will be no improvement in the mental status of either parent, such neglect as is shown will remain static, or increase, not decrease. The use by the trial court of the word "unintentional" was perhaps unfortunate and was not necessary to justify the court's ruling. The finding by the court that the parents are guilty of neglect because of their incapacity and inability is justified under the terms of the statute and is neither judicial legislation nor error. Appellants' disagreement with this conclusion would seem to be one of degree. We quote from their brief, p. 21:

"This is not to say that the Wyoming courts should not have the ability to terminate parents' rights when they simply do not have the capacity to care for their children, even with outside assistance—such a position would be wholly unrealistic."

Argument I is based on two grounds: (1) It was error to permit the family doctor to testify as an expert as to the mental age of each parent, and (2) the evidence is insufficient to permit termination of parental rights.

Appellants state in their brief regarding (1) above, "it is not argued that the general practitioner was incompetent to testify as to whether the parents were mentally retarded. But it is strenuously urged that the family doctor was not competent to testify as to the exact degree of mental retardation by setting a mental age for both of them, and even if he was competent to so testify, the testimony should not have been accorded substantial weight." The family doctor testified at length both on direct and cross-examination. During the previous three or four years he had seen both parents on very many occasions in connection with various ailments, and also in connection with the birth and condition of the child. In addition, he saw them frequently on the streets of the town where they reside and at a bowling alley where he bowled and they did also. He testified that he had been in general practice for nine years at his present location and spent four years at a school for mentally retarded individuals running drug studies and serving as an emergency physician. He was permitted to testify, without objection, as to the fact that both parents were mentally retarded, the condition of the mother being much worse than that of the father; that they had trouble in understanding ordinary matters; were unable to communicate or adapt with other people. Over objection, he was permitted to testify that in his opinion the father had the mentality of about a ten-year-old child, and the mother that of a preschool child. All of

his testimony was as a result of a frequent and close association with and observation of each of the parents.

■ ■ Appellants insist that as to the mental age of the parents the doctor did not make the tests that an expert witness would have made. In this regard, appellants object that no tests were made of a psychological nature and no special interviews were had for the purpose of determining their mental age. It is, of course, true that the so-called experts do use psychological tests by questions and other means in reaching their opinion. However, in practically all of such cases this procedure is followed because the person being examined is a stranger to the expert and the expert has no other means of making an evaluation. As to which type of examination—the psychological tests or the long-time acquaintance and first-hand knowledge—is best is a matter we do not have to decide. It is sufficient to say that the family doctor with some mental health training and his own personal knowledge is as competent to reach an opinion as to mental age as is the expert witness whose examination will ordinarily cover a period of time not exceeding one week. Additionally, this court has long held that the qualifications and knowledge of an expert are matters resting largely in the discretion of the trial court whose determination is usually final. *Runnion v. Kitts,* Wyo., 531 P.2d 1307, 1309. Both types of testimony are admissible, the question being the weight to be given such testimony by the trier of fact, and this would seem to be the opinion of the appellants as shown by the above quotation from their brief.

There is no showing here as to what weight was given by the trial court to the testimony of the doctor in this respect and under well-known rules we must assume that the trial court placed it in the proper perspective. Incidentally, it is of interest to note that the County Director of Public Assistance, who had retired at the time he appeared as a witness but who had occupied the office for 37 years and had known the father for over 25 years and the mother for over 15 years, was permitted to testify, without objection, that the father's mentality was that of a seven or eight-year-old child, and the mother's no more than that.

■ The last question raised is a contention that the evidence is insufficient to support the judgment of the trial court. As to this matter, we are faced with the rule reported so often that further citing of authority is unnecessary, that evidence of the successful party only will be considered in determining the sufficiency of the evidence. Appellants seem to divide their argument in two parts, the first being that the burden of proof which should be required to reach the decision was not met. The statute is silent as to the degree of burden of proof, but appellants contend that in a case of this type it should be designated as "clear and satisfactory evidence" or "clear and convincing evidence" and not a "preponderance of the evidence." Such a contention is merely a play on words and no attempt is made to show in what respect the two tests advocated by the appellants differ from preponderance of the evidence, nor where the evidence in this case fails to be clear and convincing, or clear and satisfactory. A Wyoming case quoted by appellants in their brief on another matter, and a case, incidentally, completely different from the type of case involved here, contains the following statement which we believe is the rule to apply in this case: "A reviewing court in a case of this nature is not in a position to interpret and evaluate evidence but instead is obligated to determine whether or not such evidence presented is a substantial basis for the trial court's holding." *Ward v. Yoder,* Wyo., 355 P.2d 371, 377.

Many cases have been cited by both parties in their briefs and we have carefully considered all of them. Unfortunately they are of little assistance. Those refusing termination of rights are based on statutes much different from the Wyoming provisions and on factual situations differing from those of the instant case. In-

deed, the parties concede they can find no case exactly in point. No two cases of this type are alike, and each must be decided on the basis of its own individual facts.

Because of the type of case here involved, we have gone further than required in considering the evidence and have carefully read all of the testimony offered by both parties. As is stated by appellants in their brief the state admittedly proved the parents are mentally retarded. We are not required to give further consideration to this point. However, the evidence of various witnesses presented by the county attorney shows that neither parent is employable because neither is capable of being taught anything to improve their mental capacity or their ability to handle any type of employment. It is unquestionably shown that both parents have been completely supported by public assistance for many years and that such assistance will be required for the rest of the life of each. They are unable to manage simple financial matters and unless supervised cannot be trusted with using the assistance checks they receive for providing the necessities of life. They are shown to be unable to retain or remember from one day to the next what they are told. This applies in the teachings and assistance given by persons put in their home for the purpose of showing them how to care for the child in such ways as the matter of preparing formulas or food and of giving other care. A daily repetition of such instruction was required and was in fact done by whatever welfare worker was present because of the inability of the parents to remember what to do. Both the witnesses for the county attorney and appellants seem to be in general agreement that the parents could not care for the child unless arrangements were made for daily visitation to furnish the required care. Even the paternal grandmother, in testifying that custody should be left with the parents, stated that they required help with their money and food stamps and in their general care. No such help on a voluntary basis was offered and it would seem unreasonable and not for the best interests of the child that professional welfare workers should be furnished to care for this child in the parental home on a twenty-four-hour basis for the many years until the child herself can be self-sufficient.

There is evidence from some witnesses of isolated instances of unclean premises, dirty dishes, and related matters which appellants contend are not sufficient grounds for termination. We agree. The judgment of the trial court, however, was not based on such instances, but was clearly based on the fact that the welfare of the child required that the parental rights be terminated because of the neglect caused by the mental inability of each parent. The mother did not testify in this case, the father did. His testimony gave much justification for the finding of the trial court and shows his inability to comprehend what would be required of him in caring for the child. It is conceded that his mental condition is superior to that of the mother. Under the question of ability to understand how to care for the child, the evidence shows that the parents argue as to whose turn it was to bathe her, or fulfill other requirements, each claiming it was the other's turn, and that the father would make many calls at all times of the day or night to others, including the chief of police, asking for advice as to what to do about taking care of the baby. We must assume that the trial court considered all of the evidence and gave such weight as it felt was proper in the case of each witness.

We cannot say that the evidence here presented was insufficient as a matter of law. We find no error on the part of the trial court in considering the evidence and making its decision. Having examined all of the matters raised by appellants in their brief we find no error in any respect in the court's finding and judgment of neglect, unfitness, and termination of rights, or its finding that such termination was in the best interest of the child.

AFFIRMED.

GUTHRIE, C. J., not participating.